1424

Barbara W. BURGESS, Appellant v. The AMERICAN CANCER SOCIETY, SOUTH CAROLINA DIVISION, INC., Thrift W. Tyson, Jr., Willcox, Hardee, McLeod, Buyck, Baker and Williams, P.A., James C. McLeod, Jr., and Mark W. Buyck, Jr., Respondents.

(386 S. E. (2d) 798)

Court of Appeals

*Barbara W. Burgess,* Florence, *pro se.*

*S. Keith Hutto* and *Elbert S. Dorn,* both of *Turner, Padget, Graham & Laney; Harry L. Goldberg,* of *Finkel, Georgaklis, Goldberg, Sheftman and Korn;* and *William C. Hubbard,* of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent.*

Heard Nov. 16, 1989.

Decided Dec. 4, 1989.

GARDNER, Judge:

Barbara W. Burgess (Burgess) sued the above named re-

spondents alleging causes of action for (1) fraud, (2) constructive fraud, (3) defamation, (4) and legal malpractice. The appealed order granted summary judgment on the ground that the alleged causes of action were barred by the applicable statutes of limitation. We affirm.

## ISSUE

We summarily dismiss as being without merit all questions presented except whether the trial judge erred in holding that the statute of limitations barred the actions for fraud and legal malpractice.

## FACTS

Burgess worked for The American Cancer Society (ACS) from 1969 to 1975; she was discharged on April 24, 1975, by Thrift W. Tyson, Jr., ACS's executive vice president. On the recommendation of Mark W. Buyck, Jr., she employed James C. McLeod, Jr., in connection with her contention that she was unlawfully discharged and that Tyson had slandered her. Upon the recommendation of McLeod on July 24, 1975, she signed a general release in favor of ACS and Tyson in exchange for a letter of recommendation from ACS.

Burgess testified that in 1978 Buyck told her that McLeod and Emily Oulla had an affair while McLeod was representing Burgess. Additionally, Burgess's husband, in his deposition, testified as follows:

Q. What happened in 1975 that caused you to be suspicious that Jim McLeod and Emily Oulla were close at that time?
A. I knew they were seeing each other.
Q. How did you know that?
A. Mr. McLeod told me.
Q. He told you that in 1975?
A. Yes, sir, or right after she came back.
Q. What did Mr. McLeod tell you at that time?
A. That's basically what he told me.

Burgess testified that in early June 1981, she had an anonymous call to the effect that Emily Oulla was fired from ACS and that as a result of this telephone call, she contacted Oulla by telephone and later had a conference

with her in a restaurant. Burgess testified that Oulla told her that "she had been a part of the lies and the behavior and all of the garbage that had come out of the cancer office" and that she had an affair with McLeod. Burgess testified that Oulla told her that she had taken information from McLeod back to Tyson and she would meet him on Saturday, and she even thought she remembered one time taking an envelope from Jim McLeod to Thrift Tyson.

## DISCUSSION

In South Carolina, the statute of limitations for ■ causes of action for fraud is governed by the "discovery rule," and does not begin to run until discovery of the fraud itself or of "such facts as would have led to the knowledge thereof, if pursued with reasonable diligence." *Grayson v. Fidelity Life Ins. Co. of Philadelphia*, 114 S. C. 130, 135, 103 S. E. 477 (1920), quoting *Smith v. Linder*, 77 S. C. 535, 58 S. E. 610 (1907). In applying the discovery rule, inquiry is focused upon whether the complaining party acquired knowledge of any existing facts "sufficient to put said party on inquiry which, if developed, will disclose the alleged fraud." *Walter J. Klein Co. v. Kneece*, 239 S. C. 478, 123 S. E. (2d) 870 (1962), citing *Tucker v. Weathersbee*, 98 S. C. 402, 82 S. E. 638 (1914). A party cannot escape the application of this rule by claiming ignorance of existing facts and circumstances, because the law also provides that if such facts and circumstances *could have been known* to the party through the exercise of ordinary care and reasonable diligence, the same result follows. *Tucker v. Weathersbee*, 98 S. C. at 408-409, 82 S. E. at 640. Thus, either actual or constructive knowledge of facts or circumstances, indicative of fraud, trigger a duty on the part of the aggrieved party to exercise reasonable diligence in investigating and, ultimately, in pursuing a claim arising therefrom. In accordance with the aforesaid standards, a claim for fraud is barred if not filed by the proper party within six years of the time from which pertinent facts were actually known *or could have been known through the exercise of reasonable diligence.*

The legal malpractice cause of action is governed by a ■ standard similar, if not identical, to the discovery rule:

> All actions initiated under Item 5 of Section 15-3-530 as amended [which includes legal malpractice], shall be commenced within six years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.

Section 15-3-535, Code of Laws of South Carolina (1976) as amended. The foregoing statutory language has been interpreted as follows:

> [The statute of limitations begins to run when] the facts and circumstances of an injury would put a person of common knowledge and experience on *notice that some claim against another party might exist.*

*Austin v. Conway Hospital, Inc.,* 292 S. C. 334, 339, 356 S. E. (2d) 153 (Ct. App. 1987), quoting *Rogers v. Efird's Exterminating Co., Inc.,* 284 S. C. 377, 379, 325 S. E. (2d) 541, 542 (1985) (emphasis added). *See also, Snell v. Columbia Gun Exchange, Inc.,* 276 S. C. 301, 278 S. E. (2d) 333 (1981). This standard as to when the limitations period begins to run is *objective* rather than subjective. *Rogers v. Efird's Exterminating Co., Inc., supra.* Therefore, the statutory period of limitations begins to run when a person *could or should have known,* through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto. *Id., Austin v. Conway Hospital, Inc., supra. See also, Smith v. Smith,* 291 S. C. 420, 354 S. E. (2d) 36 (1987).

The statute of limitations does not begin to run until discovery of the fraud it self or of "such facts, as would have led to the knowledge thereof, if pursued with reasonable diligence." *Grayson v. Fidelity Life Ins. Co. of Philadelphia,* 114 S. C. 610 (1907). Specifically, the discovery rule focuses upon whether the complaining party acquired knowledge of any existing facts "sufficient to put said party on inquiry, which, if developed, will disclose the alleged fraud." *Walter J. Kline Co. v. Kneece,* 239 S. C. at 483, 484, 123 S. E. (2d) at 874 quoting *Tucker v. Weathersbee,* 98 S. C. 402, 82 S. E. 638 (1914). Moreover, although a party claims ignorance of existing facts and circumstances, the same result follows if such facts and circumstances could have been known to the party

through the exercise of ordinary care and reasonable diligence. *Tucker v. Weathersbee, supra.*

The gravamen of Burgess' claim in this appeal is that (1) soon after Burgess' discharge, Tyson employed Emily Oulla to take Burgess' place as executive director of the Florence office of ACS, (2) allegedly Oulla either was having or had begun an affair with McLeod, (3) Tyson allegedly prevailed upon Oulla to pass information about Burgess' claim from McLeod to Tyson, (4) that McLeod allegedly disclosed information to Oulla about the plaintiff and her claim who passed the information on to Tyson and ACS. Burgess asserts on appeal that although she had knowledge of Oulla's relationship with McLeod, she did not know of Oulla's transmitting information from McLeod to Tyson and ACS until June 1981, when Oulla told her about transmitting the information.

It is uncontroverted that Burgess had knowledge of the alleged affair between McLeod and Oulla in 1978 and arguably had notice of the alleged affair in 1975. We hold, as did the trial judge, and as a matter of law, that Burgess' knowledge of the alleged affair between McLeod, her attorney, and Oulla, the then executive secretary of ACS, constitutes such knowledge of existing facts which were sufficient to put Burgess on inquiry and had she pursued such inquiry, it would have disclosed the alleged communications between McLeod and Oulla. And we so hold. Accordingly, we hold that the statute of limitations as to Burgess's fraud action and conspiracy began to run in 1978 and that the six-year statute of limitations was a valid defense for the respondents to Burgess's suit which was instituted on July 14, 1986. And we so hold.

For the reasons given, the appealed order is affirmed.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.