THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Robert Hoisington,       
Appellant,
 
 
 

v.

 
 
 
Douglas W. MacNeille, Keri A. Jordan, Ruth &
MacNeille, P.A., William 
 A. Ruth, and Michael G. Olivetti,       
Respondents.
 
 
 

Appeal From Beaufort County
L. Henry McKellar, Circuit Court Judge

Unpublished Opinion No. 2004-UP-274
Submitted April 6, 2004  Filed April 
 21, 2004

AFFIRMED

 
 
 
Robert Hoisington, pro se, for Appellant.
Charles J. Baker, III, Martha H. Rhodes, Susan Taylor Wall 
 and Jenny Anderson Horne, all of Charleston; and Solicitor Warren C. Powell, 
 Jr., of Columbia, for Respondents.
 
 
 

PER CURIAM: Robert Hoisington appeals an 
 order granting summary judgment to Douglas W. MacNeille, Keri A. Jordan, Ruth 
 & MacNeille, P.A., William A. Ruth and Michael G. Olivetti (collectively, 
 Respondents). Robert argues error by the trial judge in finding that the statute 
 of limitations had run prior to the service and filing of his complaint. He 
 also contends error in the judges failure to find civil liability on the part 
 of respondents and his finding that Jordan and the other respondents had no 
 duty to Robert. We affirm.
FACTUAL/PROCEDURAL BACKGROUND
Robert and Carol Hoisington, although 
 never formally married, were deemed in a previous action to have a common law 
 marriage.  They have three children, all boys, currently ages 12, 11, 
 and 8.  Carol filed for a divorce from Robert in April, 1997.  
Jordan was an associate in the 
 Hilton Head law firm of Ruth & MacNeille, P.A., while Ruth, Olivetti, and 
 MacNeille were shareholders of this firm.  Jordan was asked by Roberts and 
 Carols attorneys to be guardian ad litem (GAL) for their children in their 
 divorce action. She was officially appointed to this position on June 13, 1997, 
 although she visited the parties in May, and participated at a hearing held 
 on June 2 in this capacity.  At the June 2 hearing, Robert and Carol reached 
 an agreement and consented to Jordans recommendation that Carol be granted 
 temporary custody, with an obligation on Carols part to get substance abuse 
 counseling and both parties to undergo drug testing.  
In January 1998, Robert met with Jordan and indicated 
 he was concerned about her performance as GAL and the amount of fees she had 
 been charging.  Robert indicated he had no confidence in Jordan as the GAL, 
 and he believed she was not competent to represent his children and she was 
 extremely biased.  Jordan informed Robert and his attorney that she would consent 
 to a motion to have her relieved as GAL.  
On February 5, 1998 Robert received 
 an anonymous letter stating the following:

To Robert,
          Carol is having an affair with Doug McNeille (sic), 
 a married lawyer, for the past four or five months.  They have sex at your house 
 while your children are there.  Prove they are having an affair, and it should 
 save you a lot of money in your divorce.  Ask your lawyer.
          
-An anonymous friend who doesnt think Carol deserves alimony.

Robert read the letter and asked someone at work to look at it.  That person 
 told Robert he had been writing checks to Ruth & MacNeille.  Within five 
 minutes of reading the letter, Robert realized that the attorney referred to 
 in the letter was Jordans boss.  On February 5, Robert spoke with his attorney 
 about the letter and asked him to get a private investigator to look into the 
 matter.  
On February 23 or 24, 1998, Roberts attorney contacted 
 Jordan and informed her there was an allegation that MacNeille was having an 
 affair with Carol.  Subsequent to that conversation, Jordan saw Roberts attorney 
 at the courthouse, at which time he informed her about the anonymous letter.  
 Jordan testified, although she knew that MacNeille and Carol were acquainted 
 and that Carol visited the law firm office, she thought the visits were part 
 of Carols association with Dixie Youth baseball.  Jordan denied any knowledge 
 of the affair prior to the call from Roberts attorney.  Upon learning of the 
 allegations, Jordan immediately prepared a notice of motion to be relieved as 
 GAL.  The motion was dated February 24, 1998, and was filed on February 26, 
 1998.  A hearing was held on March 17, 1998, at which time both Roberts and 
 Carols attorneys consented to the motion.  Jordan was thereafter relieved of 
 her duties as GAL.  
At a hearing on April 30, 1998 
 a successor GAL was appointed.  When asked by the trial judge at the pre-hearing 
 conference why she had asked to be relieved, Jordan stated that there had been 
 an allegation made against a shareholder in my firm of some type of a relationship 
 with one of the parties.  
Both Robert and Carol sought custody of 
 their children.  In November 1998, the family court determined that Robert and 
 Carol had a common law marriage and the divorce action proceeded.  In July 1999, 
 Robert took Carol and MacNeilles depositions.  Carol admitted to the affair 
 with MacNeille as well as another with her sons baseball coach.  MacNeille 
 invoked the protection of the Fifth Amendment when asked if he had a sexual 
 relationship with Carol.  The successor GALs report recommended Robert be given 
 custody of the children.  In November 2000, the court granted custody of the 
 children to Robert.  In March 2001, Robert was granted a divorce from Carol 
 on the grounds of adultery.  
In August 2001, after Robert filed the current 
 action and Carol filed her own, separate action against the respondents, Carol 
 testified by way of deposition that her affair with MacNeille usually involved 
 MacNeilles use of cocaine and marijuana, and that she used cocaine with him 
 on one occasion.  She further claimed that, during their affair, MacNeille acted 
 in many ways like her attorney and spoke about the case to Jordan on at least 
 one occasion.  
On February 16, 2001, this action was filed and 
 given to the Sheriffs Office for service on Respondents.  The complaint alleged 
 malpractice on the part of Jordan arising from the conflict of interest and 
 her failure to investigate the allegations or inform the court.  It alleged 
 negligence on the part of MacNeille for endangering the children and ending 
 any chance of reconciliation between Robert and Carol. It also accused the law 
 firm of negligent inaction for failing to make efforts to police their members 
 and in not reporting MacNeille to the proper authorities.  Robert asserted, 
 as a direct and proximate result of the respondents negligence, his childrens 
 normal development was endangered, his children were put under physical risk 
 because their mothers drug addiction was being fostered, and any possibility 
 of reunion between [Robert and Carol] were (sic) diminished.  He further alleged 
 he was required to pay considerable sums in GAL fees [1] and child support, and was deprived 
 of custody of his children while they were put at risk.  The trial judge found 
 that the action was time barred by the statute of limitations because more than 
 three years had passed from Roberts receipt of the letter alleging the affair 
 to the date of filing and service.  Alternatively, he found that Jordans status 
 as GAL made her immune from civil suits relating to the performance of those 
 duties, Jordan owed no duty to Robert as the childrens father, and that MacNielle 
 was not civilly liable because South Carolina no longer recognizes the torts 
 of criminal conversation and alienation of affection.  This appeal follows.
STANDARD OF REVIEW
The purpose of summary judgment is to expedite disposition 
 of cases which do not require the services of a fact finder.  George v. 
 Fabri, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001).  When reviewing the 
 grant of a summary judgment motion, the appellate court applies the same standard 
 which governs the trial court under Rule 56(c), SCRCP:  summary judgment is 
 proper when there is no genuine issue as to any material fact and the moving 
 party is entitled to judgment as a matter of law.  Ferguson v. Charleston 
 Lincoln Mercury, Inc., 349 S.C. 558, 562, 564 S.E.2d 94, 96 (2002).  In 
 determining whether any triable issue of fact exists, the evidence and all reasonable 
 inferences drawn therefrom must be viewed in a light most favorable to the nonmoving 
 party.  Hendricks v. Clemson University, 353 S.C. 449, 455-56, 578 S.E.2d 
 711, 714 (2003).
LAW / ANALYSIS
On appeal, Robert does not dispute that the applicable 
 limitations period for his claim against respondents is three years.  Rather, 
 he contends the trial judge erred in finding the statute of limitations barred 
 this action because the action was commenced within three years.  We disagree.
South Carolina Code Ann. § 15-3-530 (Supp. 2003) provides 
 a three-year statute of limitations for legal malpractice suits or any injury 
 to the person or rights of another, not arising on contract and not enumerated 
 by law.  S.C. Code Ann. § 15-3-530(5) (Supp. 2003);  Peterson v. Richland 
 County, 335 S.C. 135, 138, 515 S.E.2d 553, 555 (Ct. App. 1999);  Berry 
 v. McLeod, 328 S.C. 435, 444, 492 S.E.2d 794, 799 (Ct. App. 1997).  With 
 respect to injuries to the person, the discovery rule provides: Except as to 
 actions initiated under Section 15-3-545 [actions for medical malpractice], 
 all actions initiated under Section 15-3-530(5) must be commenced within three 
 years after the person knew or by the exercise of reasonable diligence should 
 have known that he had a cause of action.  S.C. Code Ann. § 15-3-535 (Supp. 
 2003).
According to the discovery rule, the statute of 
 limitations begins to run when a cause of action reasonably ought to have been 
 discovered.  The statute runs from the date the injured party either knows or 
 should have known by the exercise of reasonable diligence that a cause of action 
 arises from the wrongful conduct.  Dean v. Ruscon Corp., 321 S.C. 360, 
 363, 468 S.E.2d 645, 647 (1996).

The exercise of reasonable diligence means simply that an 
 injured party must act with some promptness where the facts and circumstances 
 of an injury would put a person of common knowledge and experience on notice 
 that some right of his has been invaded or that some claim against another party 
 might exist.  The statute of limitations begins to run from this point and not 
 when advice of counsel is sought or a full-blown theory of recovery developed.

Wiggins v. Edwards, 314 S.C. 126, 128, 442 
 S.E.2d 169, 170 (1994) (quoting Snell v. Columbia Gun Exchange, Inc., 
 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981)).  The focus date under the discovery 
 rule is the date of discovery of the injury and not the date of discovery of 
 the wrongdoer.  Id. at 128, 442 S.E.2d at 170.

The important date under the discovery rule is the date 
 that a plaintiff discovers the injury, not the date of the discovery of the 
 identity of another alleged wrongdoer.  If, on the date of injury, a plaintiff 
 knows or should know that [he] had some claim against someone else, the statute 
 of limitations begins to run for all claims based on that injury.

Id. (quoting Tollison v. B & J Machinery 
 Co., Inc., 812 F.Supp. 618, 620 (D.S.C. 1993)).  
The test of whether or not a person should have 
 known the operative facts is objective rather than subjective.  Bayle v. 
 South Carolina Dept of Transp., 344 S.C. 115, 123, 542 S.E.2d 736, 740 
 (Ct. App. 2001).  The test is not whether a particular plaintiff actually knew 
 he or she had a claim against a party.  Id.  Rather, the discovery rule 
 focuses on whether the plaintiff acquired knowledge of any existing facts sufficient 
 to put the party on inquiry.  Peterson, 335 S.C. at 139, 515 S.E.2d at 
 555.
Robert contends he had no cause of action against 
 respondents until Jordan and her firm failed to investigate or report MacNeilles 
 conduct to the authorities after they were given notice of the allegation of 
 the affair on the February 23 or 24, 1998.  We disagree.  
It is clear the injuries Robert alleges all stem 
 from the sexual relationship between Carol and MacNeille and the alleged conflict 
 of interest that arose therefrom during the time period that Jordan was acting 
 as GAL.  Jordan denied any knowledge of the affair prior to being contacted 
 by Roberts attorney, and it is undisputed that, recognizing the potential conflict, 
 Jordan immediately took steps to have herself relieved as GAL to the children 
 once she was informed.  Robert had the means of discovering his potential claim 
 against the respondents when he received the anonymous letter on February 5, 
 1998.  On this date, the facts and circumstances put Robert on notice that some 
 right of his may have been invaded or that some claim against another party 
 might exist.  It is irrelevant that Jordan and the law firm may have thereafter 
 failed to investigate the allegations, as Robert acquired knowledge of facts 
 sufficient to put him on inquiry prior to the time that Jordan received notice 
 of the potential conflict of interest.  Indeed, Robert stated that at the time 
 he received the letter and discovered the connection between Jordan and MacNeille, 
 he felt it explained why all these . . . biased things [had] been happening 
 to [him] and it started making sense of what [had] transpired over the past 
 and why things had gone heavily toward Carol and heavily against [him].  Robert 
 further admitted, the machinery to inquire into the Doug MacNeille/Carol Hoisington 
 matter was underway on February 5, 1998.  The fact that an injured party does 
 not initially comprehend the full extent of the damages does not prevent the 
 proverbial clock from starting at the moment that party is aware of the facts 
 that caused the injury.  Barr v. City of Rock Hill, 330 S.C. 640, 645, 
 500 S.E.2d 157, 160 (Ct. App. 1998).  Because Robert knew or should have known 
 that he had some claim against someone on February 5, 1998 for any injuries 
 accompanied by the affair between Carol and MacNeille, the statute of limitations 
 began to run at that point for all claims based on that injury. The statute 
 of limitations began to run at this time, and not when a full-blown theory of 
 recovery was developed by Robert.
Further, we find our decision in Burgess v. Am. 
 Cancer Socy, 300 S.C. 182, 386 S.E.2d 798 (Ct. App. 1989), remarkably similar 
 to the situation in the instant case.  In Burgess, the plaintiff was 
 fired as executive director of the American Cancer Societys local office and 
 later sued the society for this termination.  Her attorney in the action was 
 having an affair during the litigation with the woman who replaced her as the 
 director of the organization.  The plaintiff learned of the alleged affair, 
 and several years later heard that the attorney had passed information regarding 
 plaintiffs lawsuit to the Cancer Society during the litigation.  She subsequently 
 sued her attorney for malpractice.  Stressing that the discovery rule focuses 
 upon whether the complaining party acquired knowledge of any existing facts 
 that would be sufficient to put the party on inquiry, such that if developed 
 would disclose the alleged wrong, the court held that the statute of limitations 
 began to accrue when the plaintiff learned of the affair, not when she learned 
 of the communications giving rise to the alleged malpractice.  Burgess, 
 300 S.C. at 186-87, 386 S.E.2d at 800-01.  Thus, the suit was barred pursuant 
 to the statute of limitations.
It is undisputed that on February 5, 1998 Robert learned 
 of the alleged affair which, as in Burgess, was very likely to lead to 
 some kind of conflict on the part of Respondents concerning the handling of 
 his legal matter.  Per the discovery rule, the statute of limitations began 
 to accrue at this time.  Because the current action was initiated more than 
 three years after this date, it is time barred by the statute of limitations 
 as a matter of law. [2] 
For the forgoing reasons, the decision of the trial 
 court is
AFFIRMED.
HUFF and STILWELL, JJ. and CURETON, AJ., concur.

 
 [1] Approximately 
 one month after Robert filed this action, Carol was ordered to reimburse Robert 
 for the $7,000 in GAL fees he paid to Jordan.  

 
 [2] In 
 light of our determination that this action is barred by the statute of limitations, 
 we need not reach Roberts remaining issues on appeal.