671 S.E.2d 636

**John and Charlene TURNER, Appellants,**

v.

**Douglas A. MILLIMAN, Consumer Benefits of America, NIA Corporation, Mid America Life Insurance Co., World Service Life Insurance Co., Provident American Life and Health Insurance Co., Provident Indemnity Life Insurance Co., and Central Reserve Life Insurance Co., Respondents.**

No. 4478.

Court of Appeals of South Carolina.

Heard Dec. 3, 2008.

Decided Jan. 12, 2009.

Rehearing Denied March 24, 2009.

John W. Carrigg, Jr., of Columbia, for Appellants.

Jonathan Matthew Harvey, of Columbia, Lawrence B. Orr, of Florence, Stephanie G. Flynn and Phillip E. Reeves, of Greenville, for Respondents.

GEATHERS, J.:

In this fraud and negligent misrepresentation action, Appellants John and Charlene Turner (collectively "the Turners") appeal from the trial court's grant of summary judgment in favor of Respondents Douglas Milliman ("Milliman"), Consumer Benefits of America ("CBA"), National Insurance Alliance Corporation, MidAmerica Life Insurance Company ("MidAmerica"), World Service Life Insurance Company, Provident American Life and Health Insurance Company ("Provident American"), Provident Indemnity Life Insurance Company ("Provident Indemnity"), and Central Reserve Life Insurance Company (collectively "Respondents"). On appeal, the Turners argue the trial court erred in finding that their claims were barred by the three-year statute of limitations; in finding that Milliman's representations to the Turners were insufficient to support a claim for fraud or negligent misrepresentation; in holding that Milliman's statements to John Turner ("Turner") were not attributable to MidAmerica or CBA because Milliman was an insurance broker and not an insurance agent; and, in holding that Turner's wife did not have standing to sue Respondents. We affirm as modified.

## FACTS

In November 1996, Turner was in need of health insurance coverage. One of Turner's customers recommended Milliman, a local insurance agent,[1] whom Turner subsequently contacted. Turner's health insurance had recently expired after he left his prior employment at an accounting firm. At the time that Turner sought Milliman's services, Turner was employed at the family's radiator service business.

The Turners and Milliman discussed Turner's health insurance options, specifically the option to purchase group health insurance. Milliman represented to Turner that a group policy with CBA would be a good option because the future premiums would not increase dramatically or as dramatically as the premiums with individual insurance plans. Turner also alleged that Milliman stated group health insurance would be beneficial because of the following: (1) Turner was at an age when he could start developing medical problems and this policy would allow him to keep his coverage; (2) companies writing individual insurance policies were going out of business and the prices of those policies were skyrocketing; and (3) the only way people could afford insurance was to purchase group insurance. Turner further stated that Milliman told him CBA acted as a watchdog over the insurance industry for the benefit of its members and would notify its members when better group coverage was available.

Based on these alleged representations, Turner completed an application for group health insurance through CBA. This group insurance coverage was issued by MidAmerica, which was concurrently assumed and reinsured by Provident Indemnity.[2] Turner's first premium payment in November 1996 was $122.70, which represented his monthly health insurance pre-

---

1. Respondents argue Milliman is a general insurance broker rather than an insurance agent. For purposes of this appeal, we generally refer to Milliman as an "insurance agent" but express no opinion as to whether Milliman is an agent or broker, as reaching a conclusion in this regard is not necessary for the disposition of this case.

2. CBA notified Turner in April 1997 that Turner's policy with MidAmerica would be terminated and assumed in May 1997 by Provident American.

mium as well as CBA membership dues.[3] From the following month until May 1997, $101.70 was drafted from Turner's account for his monthly health insurance premium. In June 1997, Turner's premium increased to $109.70 and did not increase for eleven months. In June 1998, his premium increased to $143.38, and in December 1998, his premium again increased to $194.50. During the following two years, his premiums increased every six months (June 1999, $230.90; December 1999, $271.95; June 2000, $331.81; and December 2000, $456.21). Turner stated he always anticipated the premiums would increase, but by the end of 1999 into 2000, he thought the increases were becoming unreasonable and "just getting completely out of hand."

On April 30, 2001, CBA informed Turner that his monthly premium would increase to $646.19 on June 1, 2001 due to increased research and development healthcare costs. Then, on May 31, 2001, CBA again notified Turner that his premium would increase to $799.61 on July 1, 2001, because of "rising healthcare costs as well as the substantial and continued losses sustained by Provident American. . . ."

In June 2001, as a result of the continued increases in Turner's premiums, Turner submitted a complaint to the South Carolina Department of Insurance. The Department of Insurance wrote Provident American inquiring about its premium rate increases. In response to the Department of Insurance's letter, Provident American told the Department that Turner's insurance contract permitted the company to increase rates with thirty-one days advance written notice and that "it had no alternative but to increase premium rates." Provident American also represented to the Department of Insurance that "[its] members were accustomed to receiving biannual premium rate adjustments," and the May 31, 2001 increase "affect[ed] all current ... certificate holders." Thereafter, the Department of Insurance notified Turner that he was insured under a "group association policy," and as such, those rates were not subject to approval by the Department.

---

3. To obtain group health insurance through CBA, Turner had to join CBA as a member.

On June 22, 2001, Provident American notified Turner that it would unilaterally terminate the CBA group association policy, but Turner could reinsure under another group policy for the same initial premium with substantially fewer benefits. Turner testified that he attempted to find alternate health care coverage, but due to the onset of diabetes, no insurance company would insure him. Turner paid his premiums until Provident American terminated his policy in September 2001, and he has been without health insurance since this time.

On December 19, 2003, the Turners initiated suit against Respondents for fraud, negligent misrepresentation, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA").[4] In essence, the Turners alleged that Milliman, as an agent of Respondents, made several false representations that induced Turner to sign the insurance application and purchase the group policy from CBA. The Turners stated that because of the excessive premium increases, they were unable to maintain the policy, which ultimately caused them to suffer damages. In turn, each Respondent filed a motion for summary judgment based on the statute of limitations, a lack of material evidence to support the Turners' causes of action, and Charlene Turner's (Mrs. Turner) lack of standing as a real party in interest.

The trial court granted Respondents' motions, finding the Turners "should have been on notice of their alleged injury beginning with the premium increases in 1998." Because the Turners did not file suit until December 19, 2003, and because they "should have been on notice of their alleged claims before December 20, 2000," the trial court found their claims were barred by the three-year statute of limitations. The trial court additionally held Milliman's representations to the Turners were matters of opinion or representations as to future events, which were not actionable in fraud or negligent misrepresentation cases. The trial court further held that the Turners' claim for a violation of SCUTPA was unsupported as SCUTPA contains an explicit exemption for insurance-related practices.[5] Finally, the trial court found Mrs. Turner was not

4. S.C.Code Ann. §§ 39–5–10 to –170.

5. The Turners do not appeal the trial court's ruling on this issue.

a real party in interest because she was not a co-insured under the group coverage policy.

The Turners filed a Rule 59(e), SCRCP, motion, which the trial court denied. Respondents also filed a Rule 59(e), SCRCP, motion to alter or amend the judgment, asserting additional sustaining grounds for the trial court's grant of summary judgment. The trial court granted Respondents' motion and amended its order to find that Milliman's representations were not attributable to MidAmerica or CBA because he was not an employee or agent of the respective insurers. Further, because MidAmerica had ceded all of its rights and responsibilities to Provident Indemnity, any alleged misrepresentations by Milliman were not attributable to MidAmerica. This appeal follows.

## STANDARD OF REVIEW

An appellate court reviews the grant of summary judgment under the same standard applied by the trial court. *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). The trial court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 334 (2003). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 134, 659 S.E.2d 496, 498 (2008).

## ISSUES ON APPEAL

The Turners raise four issues on appeal:

(1) The trial court erred in finding their claims were barred by the statute of limitations because conflicting evidence was presented as to when the Turners knew or should have known they had colorable claims against Respondents.

(2) The trial court erred in finding Milliman's representations to the Turners did not support an action for fraud or negligent misrepresentation because the statements were made as part of a general scheme to induce the Turners to purchase group health insurance.

(3) The trial court erred in holding Milliman's statements were not attributable to MidAmerica or CBA because Milliman held himself out as an insurance agent of MidAmerica and CBA.

(4) The trial court erred in holding Mrs. Turner lacked standing because the contracting parties intended for her to be a third-party beneficiary of the insurance contract.

## LAW/ANALYSIS

### I. The Statute of Limitations as a Bar to Recovery

The Turners argue the trial court erred in granting Respondents' motions for summary judgment based on the statute of limitations. We agree.

The statute of limitations for a tort action is three years. S.C.Code Ann. § 15-3-530(5) (Supp.2007) (stating the statute of limitations for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law" is three years). The limitations period begins to run when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist. *Burgess v. Am. Cancer Soc'y, South Carolina Div., Inc.*, 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct.App.1989); *see also* S.C.Code Ann. § 15-3-535 (Supp.2007) ("[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."); *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) (noting that under the discovery rule, the statute of limitations begins to run from the date the

injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct). The standard as to when the limitations period begins to run is objective rather than subjective. *Burgess*, 300 S.C. at 186, 386 S.E.2d at 800. Moreover, "[t]he statute is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery; instead, reasonable diligence requires a plaintiff to 'act with some promptness.'" *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App.1998) (internal citations omitted).

 The burden of establishing the bar of the statute of limitations rests upon the one interposing it, and when the testimony is conflicting upon the question, it becomes an issue for the jury to decide. *Brown v. Finger*, 240 S.C. 102, 113, 124 S.E.2d 781, 786 (1962). However, when there is no conflicting evidence or only one reasonable inference can be drawn from the evidence, the determination of when a party knew or should have known that he or she had a claim becomes a matter of law to be decided by the trial court. *See Arant v. Kressler*, 327 S.C. 225, 229, 489 S.E.2d 206, 208 (1997) (finding the trial court properly denied amendment of pleadings against defendant doctor in medical malpractice case and properly directed a verdict for the defendants when no conflicting testimony was presented regarding time of discovery of additional cause of action such that the notice issue was one for the trial court to decide); *Johnston v. Bowen*, 313 S.C. 61, 65, 437 S.E.2d 45, 47 (1993) (finding grant of summary judgment in medical malpractice case was proper based on statute of limitations because even taking the facts in the light most favorable to the plaintiff, only one reasonable inference existed as to when the plaintiff knew or should have known she had a claim).

The trial court found that the initial premium level in November 1996 was $101.80 per month, which had almost doubled to $194.50 by October 1998 and had increased over 250% to $266.95 by October 1999. The trial court held that these increases "standing alone were sufficient to put [the Turners] on notice that Mr. Milliman's statements about premium increases were wrong and that [the Turners] were being injured financially." Because the premiums only continued to increase, the trial court reasoned the Turners should have

been on notice beginning with the premium increases in 1998 but no later than the cutoff date of December 19, 2000.

Viewing the evidence in the light most favorable to the Turners, there is more than one reasonable inference as to when the Turners knew or should have known they had a claim against Respondents. Although the dates and amounts of the premium increases are undisputed, we believe a genuine issue of material fact exists as to when the Turners were on notice that Milliman's prior representations were inconsistent with the premium increases. The premiums increased significantly between 1998 and 2000, but the Turners argue that it was not until May 30, 2001, when they received notification that the premium would increase to $799.61, that they were on notice of a potential claim. While Turner conceded he expected the premiums to increase, he stated that by the end of June 2001, he was aware the premium increases were unreasonable. Upon receiving the last premium increase notification, the Turners promptly investigated the premium increases by corresponding with the South Carolina Department of Insurance in an attempt to ascertain why the premiums were increasing so drastically. Further, Mrs. Turner stated in a 2003 letter to the Delaware Department of Insurance that "soaring premiums" were not a concern until 2001.

While Respondents allege only one reasonable inference can be drawn from the evidence, based on the varying amounts of the premium increases and the timing of those premium increases, we believe reasonable minds could differ on this issue. *See Byerly v. Connor,* 307 S.C. 441, 445, 415 S.E.2d 796, 799 (1992) (stating summary judgment is appropriate when "plain, palpable, and indisputable facts exist on which reasonable minds cannot differ"). The determination of when the Turners knew or should have known of any potential claims was consequently a jury issue. *See Santee Portland Cement Co. v. Daniel Int'l Corp.,* 299 S.C. 269, 274, 384 S.E.2d 693, 696 (1989); *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. Of Unidynamics Corp.,* 319 S.C. 556, 462 S.E.2d 858 (1995) (finding that when all of the evidence goes to the reasonableness of a party's actions, the statute of limitations issue becomes one for the jury to decide). As such, the trial court improperly

granted Respondents' motions for summary judgment based on the expiration of the statute of limitations.

## II. Milliman's Statements as a Basis for Fraud or Negligent Misrepresentation Claims

■ The Turners next contend that the trial court erred in finding Milliman's representations to the Turners did not support an action for fraud or negligent misrepresentation because the statements were made as part of a general scheme to induce the Turners to purchase group health insurance. We disagree.

■■ A plaintiff asserting a claim for fraud in the inducement to enter into a contract must establish by clear and convincing evidence the following:

(1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity or reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the plaintiff's ignorance of its falsity, (7) the plaintiff's reliance on its truth, (8) the plaintiff's right to rely thereon, and (9) the plaintiff's consequent and proximate injury.

*M.B. Kahn Constr. Co. v. South Carolina Nat'l Bank of Charleston,* 275 S.C. 381, 384, 271 S.E.2d 414, 415 (1980). Clear and convincing evidence is the "degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established." *Peeler v. Spartan Radiocasting, Inc.,* 324 S.C. 261, 265 n. 4, 478 S.E.2d 282, 284 n. 4 (1996). In such a case as this, fraud "must be established by evidence which is clear, definite, unequivocal, and satisfactory, or such, as has been said, as to lead to but one conclusion, or as to leave no reasonable doubt" as to the conclusion to be drawn. *All v. Prillaman,* 200 S.C. 279, 304, 20 S.E.2d 741, 750 (1942) (specifying the standard of proof to establish a constructive trust as a result of party's fraudulent actions).

■ A plaintiff in a negligent misrepresentation action must establish by a preponderance of the evidence the following:

(1) the defendant made a false representation to the plaintiff, (2) the defendant had a pecuniary interest in making the statement, (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff, (4) the defendant breached that duty by failing to exercise due care, (5) the plaintiff justifiably relied on the represen-

tation, and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*McLaughlin v. Williams,* 379 S.C. 451, 456, 665 S.E.2d 667, 670 (Ct.App.2008). A key difference between fraud and negligent misrepresentation is that fraud requires the conveyance of a known falsity, while negligent misrepresentation is predicated upon transmission of a negligently made false statement. *See Gruber v. Santee Frozen Foods, Inc.,* 309 S.C. 13, 20, 419 S.E.2d 795, 799 (Ct.App.1992).

Under either cause of action, the failure to prove any one of the required elements is fatal to the claim. *Brown v. Stewart,* 348 S.C. 33, 41, 557 S.E.2d 676, 680 (Ct.App.2001). Generally, for a representation to be actionable, it must relate to a present or pre-existing fact rather than a statement of future events or an unfulfilled promise. *Id.* at 41–42, 557 S.E.2d at 680. Further, sales talk or "puffing" ordinarily is not sufficient to establish a claim for negligent misrepresentation or fraud. *Jones v. Cooper,* 234 S.C. 477, 487, 109 S.E.2d 5, 10 (1959); *Satcher v. Berry,* 299 S.C. 381, 383, 385 S.E.2d 41, 42 (Ct.App.1989). An exception to the general rule is recognized for unfulfilled promises which were made by a party who never intended to fulfill the promise and only made the promise to induce the performance of another party. *Brown,* 348 S.C. at 42, 557 S.E.2d at 680.

Viewing the facts in the light most favorable to the Turners, even if Milliman made the alleged statements to the Turners, these representations are not actionable as a matter of law as they cannot be construed as more than Milliman's opinion as to future events. Turner acknowledged that Milliman's statements about the policy being the "best group insurance product he had ever seen or offered for sale" was only Milliman's opinion. Further, when questioned as to whether Turner thought Milliman was lying to him when Milliman told Turner the premiums would not drastically increase, Turner responded "no" and agreed that he thought Milliman was giving Turner his honest and informed belief at that time. With respect to the remaining representations by Milliman, Turner acknowledged that these statements related to future events. Because mere unfulfilled promises or statements as to future events are not actionable, and because no evidence was presented to show Milliman made those statements only to induce the Turners into procuring the policy, the trial court properly

granted Respondents' summary judgment motions on this ground.[6] *See Woods v. State,* 314 S.C. 501, 506, 431 S.E.2d 260, 263 (Ct.App.1993) (stating the failure to observe a promise may support an inference of fraud or a lack of intent to perform only when the failure is coupled with other evidence).

## CONCLUSION

Even though we disagree with the trial court's finding that the statute of limitations expired as a matter of law, we nevertheless affirm its decision to grant summary judgment based on the nature of Milliman's statements to the Turners. Because the Turners' action for fraud and negligent misrepresentation against Respondents hinges on Milliman's representations, which are not actionable as a matter of law, the trial court properly granted summary judgment in favor of Respondents.

Accordingly, the trial court's order is

**AFFIRMED AS MODIFIED.**

WILLIAMS and PIEPER, JJ., concur.

---

**6.** Due to the disposition of this issue, we need not address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal); *Barr v. City of Rock Hill,* 330 S.C. 640, 646 n. 3, 500 S.E.2d 157, 160 n. 3 (Ct.App.1998) (affirming grant of summary judgment on the expiration of the statute of limitations and declining to address the appellants' remaining arguments on the trial court's alternate grounds for granting summary judgment).