**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Bierer and Associates, Inc., Appellant,

v.

Jan F. Kennerly, Jr., Danielle Kennerly, EUSA, LLC, J&D Farms, LLC, Trystar LLC, Travis Pattern & Foundry, Inc., Illinois Tool Works, Inc., and David Deinek, Defendants,

of which Trystar LLC and Travis Pattern & Foundry, Inc. are Respondents.

AND

Jan F. Kennerly, Jr., Defendant/Third Party Plaintiff,

v.

Walter Bierer, Brent Jeffries, and Joseph Bierer, Third Party Defendants.

Appellate Case No. 2023-000780

Appeal From Richland County
R. Lawton McIntosh, Circuit Court Judge

Unpublished Opinion No. 2025-UP-226
Heard February 13, 2025 – Filed July 2, 2025

# AFFIRMED

James Mixon Griffin and Margaret Nicole Fox, both of
Griffin Humphries LLC, of Columbia, for Appellant.

Brian C. Duffy and Blake Abernethy McKie, both of
Duffy & Young, LLC, of Charleston, and John W. Ursu,
of Minneapolis, all for Respondent Trystar LLC.

Lyndey Ritz Zwing Bryant, of Adams and Reese LLP,
and John Fisher Beach, of John Beach Mediation, LLC,
both of Columbia, for Respondent Travis Pattern &
Foundry, Inc.

**PER CURIAM:**  Appellant Bierer and Associates, Inc. (Bierer) appeals the trial court's grant of both Respondents'—Trystar LLC (Trystar) and Travis Pattern and Foundry, Inc. (Travis)—motions for summary judgment on Bierer's claims against them.  Bierer argues the trial court erred by finding that these claims were barred by the statutes of limitations as a matter of law and that fraudulent concealment by the Respondents did not toll the statutes.  We affirm.

## FACTS/PROCEDURAL HISTORY

This case centers around the actions of Jan "Rick" Kennerly, who worked for Bierer from 2003–2018.  Bierer develops and sells various products for use in the electrical utility industry.  Beginning in 2009, Kennerly served as a national sales representative for Bierer.  That same year, Bierer tasked Kennerly with identifying manufacturers to develop parts for a new product.  Kennerly located Travis to manufacture one part (clamps) and Trystar to manufacture another (cables).  The issues in this case arose because, while in this role, Kennerly entered into employment contracts with other companies, including Travis and Trystar, allegedly without Bierer's knowledge or approval and against Bierer's employment policy.

In 2012, Kennerly switched his professional contact information from Bierer's company account to his personal account.  Around this time, Kennerly began to submit fewer credit card receipts and reports from sales trips.  Walter Bierer, Bierer's

owner, and his son Joe Bierer, another Bierer employee, took notice of these activities, referring to them in hindsight as "obvious" efforts to dissociate from Bierer.

In 2013, Kennerly began working for Travis as an independent sales representative and also entered into an employment agreement with Trystar. Walter admits that Kennerly "wasn't hiding that he was working with Travis" and that Kennerly spent many hours working with Travis and Trystar as they developed product parts. Walter claims he understood Kennerly to have working relationships with Travis and Trystar on behalf of Bierer, but he was never aware that Kennerly worked directly for these companies as a compensated sales representative. However, in 2015, Walter emailed Kennerly expressing discontent with Kennerly's performance and noting it may be time for Kennerly to look for employment elsewhere.

The event that precipitated this litigation occurred on July 10, 2018, when Walter "came across" an advertisement for a conference that described Kennerly as a Travis employee. Though Walter acknowledges having seen this brochure "years before," he decided to "put it to rest" in 2018 by calling Travis to ask if Kennerly worked directly for Travis. After learning on this call that Kennerly was in fact a Travis employee, Bierer called Trystar and discovered that Kennerly was also employed by Trystar. Walter fired Kennerly that same day.

Bierer filed an initial complaint against Kennerly in September 2018. On April 15, 2021, after conducting third-party discovery, Bierer added Travis and Trystar (in addition to others) as defendants. In its Third Amended Complaint, Bierer brought claims against Travis and Trystar for aiding and abetting breach of fiduciary duty, tortious interference with existing contractual relations, tortious interference with prospective business arrangements, unjust enrichment, common law unfair competition, and violation of the South Carolina Trade Secrets Act. Bierer alleged it discovered its claims against Travis and Trystar on July 10, 2018, the day it made the two phone calls discussed above.

Travis and Trystar both moved for summary judgment, arguing Bierer's claims against them were barred by statutes of limitations[1] because Bierer was on notice of these claims years before the statutory look-back date of April 15, 2018. In response, Bierer asserted that Kennerly fraudulently concealed his employment and that this tolled the statutes of limitations. After a hearing on the matter, the trial

---

[1] S.C. Code Ann. § 15-3-530(5) (2005); S.C. Code Ann. § 39-8-70 (2016).

court granted both motions, finding Bierer was on notice of its potential claims as early as 2013 and as late as 2015. This appeal followed.

## LAW/ANALYSIS

### I.    Statutes of Limitations

Bierer's claims against Travis and Trystar are subject to two separate three-year limitations periods. S.C. Code Ann. § 15-3-530(5) (applying a three-year statute of limitations to claims for "injury to the person or rights of another" that are "not arising on contract"); S.C. Code Ann. § 39-8-70 (applying a three-year statute of limitations to trade secret claims). In South Carolina, the limitations period is defined by the discovery rule. S.C. Code Ann. § 15-3-535 (2005) ("[A]ll actions initiated under [s]ection 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."); § 39-8-70 ("An action for misappropriation must be brought within three years after the misappropriation is discovered *or by the exercise of reasonable diligence should have been discovered*." (emphasis added)). "Under the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist." *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 525–26, 787 S.E.2d 485, 489 (2016). "[W]hether the particular plaintiff actually knew he had a claim is not the test," rather, "courts must decide" the notice question based on the "circumstances of the case." *Young v. S.C. Dep't of Corr.*, 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct. App. 1999). In other words, the "standard as to when the limitations period begins to run is *objective* rather than subjective." *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct. App. 1989).

Accordingly, the statutory period begins to run "when a person *could or should have known*, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto." *Stokes-Craven*, 416 S.C. at 526, 787 S.E.2d at 489–90 (quoting *Burgess*, 300 S.C. at 186, 386 S.E.2d at 800). To exercise reasonable diligence, "an injured party must act [promptly] where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Wiggins v. Edwards*, 314 S.C. 126, 128, 442 S.E.2d 169, 170 (1994) (quoting *Snell v. Columbia Gun Exch.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981)). "[T]he focus is upon the date of

discovery of the *injury*, not the date of discovery of the *wrongdoer*." *Id.* (emphases added). Thus, the limitations period begins to run as soon as the injured party knows or should have known through reasonable diligence its rights have been invaded, even if it "[does] not know the exact nature of the wrong." *Brown v. Pearson*, 326 S.C. 409, 418, 483 S.E.2d 477, 482 (Ct. App. 1997).

Because Bierer filed its Third Amended Complaint, which named Travis and Trystar as defendants, on April 15, 2021, the statutes of limitations bar any claims that accrued before April 15, 2018. We find that reasonable diligence would have revealed to Bierer the existence of possible claims well before this date. The record indicates Bierer's claims against Travis and Trystar accrued at some point between 2013 and 2016. Therefore, we hold Bierer's claims were barred as a matter of law and the trial court did not err by granting Travis's and Trystar's motions for summary judgment.

## A. 2015 Email

Kennerly began to exhibit behaviors as early as 2012 that evidenced an intent to distance himself from Bierer, such as transferring his email and phone from the company account to personal accounts, submitting fewer receipts and other reports, and openly conducting business with manufacturers. Bierer contends it never suspected misconduct because it accepted Kennerly's "benign explanation" for these actions. However, Walter emailed Kennerly the following in October 2015:

> I see your lack of reporting your activities (itinerary and reports) as a symptom of a larger issue which is your lack of accountability to anyone and everyone in our company including me. More and more, I am beginning to wonder why I am paying you large sums of money to disappear for weeks at a time. For years I have trusted you were always doing the "right thing" but my trust is waning . . . . I think it may be time for you to begin looking for employment elsewhere unless you can think of some way to resolve and reverse all the issues mentioned.

This email suggests that Bierer had notice of potential claims involving Kennerly. Bierer argues that, at the time Walter sent this email, it "had no reason to suspect Kennerly of any wrong-doing pertaining to Travis or Trystar." It further argues, "[t]here was no information from which Bierer could reasonably be on notice that its trusted employee had entered into side deals with Travis and Trystar to

sabotage Bierer sales using Bierer's sales force." This argument misinterprets the discovery rule. It does not matter that Bierer was unaware of Kennerly's specific misconduct involving Travis and Trystar. The pertinent question is whether Bierer was on notice of *some claim* against another party. *Stokes-Craven*, 416 S.C. at 525–26, 787 S.E.2d at 489. The content and tone of Walter's email illustrates Bierer's suspicions about Kennerly's conduct. Had Bierer exercised reasonable diligence to investigate Kennerly's activities at this time, it could have discovered its claims against Travis and Trystar. When viewed alongside the additional evidence outlined below, no genuine issue exists as to whether Bierer's claims accrued prior to April 15, 2018.

## B. Notice of Claims against Travis

Travis submits it consistently presented Kennerly to the public as its sales representative.[2] Most notably, in 2014, Kennerly spoke at a technical seminar presented by Travis and attended by hundreds of industry engineers and vendors. An advertisement for the program in a regional newsletter stated the presenters were "[Kennerly] of Travis" and "Dick Pelletier of Travis." A biography of Kennerly in this newsletter described that he "has worked for [Bierer] as an engineering and operations manager for 15 years and Travis UGD for 2 years."

The undisputed evidence shows that Bierer could have discovered its claims against Travis when it first saw this advertisement, which occurred years prior to 2018.[3] The exercise of reasonable diligence—such as by making the exact phone call Bierer made in 2018—would have revealed to Bierer that Travis employed Kennerly as sales representative. The crucial question, of course, is why Bierer did not reach out to Travis when it initially discovered the 2014 advertisement that described Kennerly as a Travis employee. Walter claims he did confront Kennerly when he first came across the newsletter, but Kennerly laughed it off. Walter contends he believed Kennerly's explanation that the Travis employee who created

---

[2] Of note, it does appear that the public understood Kennerly to be the sales representative for both Bierer and Travis. For example, one customer emailed Kennerly at his Bierer email address asking, "Would you be handling this as [Travis's] national sales manager or Bierer's?"

[3] The record contains conflicting evidence regarding when Bierer first discovered the newsletter. In deposition testimony, Walter Bierer claimed to have been aware of it the year it was published, in 2014. However, in his affidavit submitted in opposition to summary judgment, Walter claimed he first learned of the advertisement in 2015 or 2016.

the advertisement "assumed Kennerly was an employee of Travis because Kennerly had spent so much time assisting Travis." According to Bierer, a jury must determine whether Bierer acted reasonably by relying on Kennerly's statements. The question for the court is *not* whether Bierer acted reasonably but whether Bierer could have discovered the claims through the exercise of reasonable diligence. *Stokes-Craven*, 416 S.C. at 526, 787 S.E.2d at 489–90. Bierer "cannot escape the application" of the discovery rule by "claiming ignorance" of Kennerly's relationship with Travis because this relationship "could have been known" to Bierer through "the exercise of ordinary care and reasonable diligence." *Burgess,* 300 S.C. at 185, 386 S.E.2d at 799.

In sum, we find Bierer's claims against Travis accrued when it *first* discovered the newsletter that listed Kennerly as a Travis employee, and there is no genuine issue that this occurred before April 15, 2018. Thus, the statutes of limitations bar Bierer's claims against Travis and the trial court did not err by granting Travis's motion for summary judgment.

### C. Notice of Claims against Trystar

Communications between Bierer and Trystar indicate that Bierer suspected Trystar was interfering with customer relationships as early as 2013. In an email sent on April 9, 2013, Bierer accused Trystar of "possibly circumventing [its] efforts to establish and support new sales." On December 5, 2013, Bierer wrote to Trystar that "another line was crossed" and that "Trystar has a history (two other product lines) of undermining **any** and **all** business that Bierer has introduced them to by simply having product shipped directly to the customer[']s location that Bierer foolishly supplied them, as in this case."

Bierer argues that at the time these emails were sent, it believed Trystar was partaking in "legitimate, marketplace competition" by selling directly to Bierer's customers. According to Bierer, this problem (manufacturers selling around distributors once they obtain the distributors' customer information) is commonplace in the absence of an exclusivity agreement. Bierer claims that because it did not have an exclusivity agreement with Trystar, Trystar was "well within its legal right to sell directly to Bierer customers" and "the most [it] could do was complain to Trystar." In essence, Bierer argues it was not on notice that a claim against Trystar existed because it attributed the loss of sales to a legitimate competitive practice and was unaware of Kennerly's sales arrangement with Trystar.

However, this argument misrepresents the discovery rule. Bierer's subjective belief that Trystar was acting within the legal boundaries of marketplace competition is irrelevant. *See Burgess*, 300 S.C. at 186, 386 S.E.2d at 800 ("[The] standard as to when the limitations period begins to run is *objective* rather than subjective."). The fact that Bierer lacked knowledge of Kennerly's involvement is equally irrelevant. *See Wiggins*, 314 S.C. at 128, 442 S.E.2d at 170 ("[T]he focus is upon the date of discovery of the injury, not the date of discovery of the wrongdoer[.]"); *Brown*, 326 S.C. at 418, 483 S.E.2d at 482 (finding the statute of limitations began to run when the appellant "became aware of [its] injuries" even though they "did not know the exact nature of the wrong"). The question for the court is whether "a person of common knowledge and experience" in Bierer's position would be on notice that "*some* claim" against Trystar existed or likely existed. *Stokes-Craven*, 416 S.C. at 525–26, 787 S.E.2d at 489 (emphasis added).

When Trystar and Bierer began working together, Trystar represented to Bierer that it did not intend to sell directly to Bierer's customers because Trystar did not have its own sales force. Three years later, Trystar began doing exactly that—selling directly to Bierer's customers. Had Bierer exercised reasonable diligence to find out why, it could have discovered its claim against Trystar. For example, had Bierer spoken with its contact at Trystar to address its concerns, exactly as it did in 2018, it likely would have discovered that Trystar began selling directly to Bierer's customers after employing Kennerly as a sales representative.

Bierer argues it exercised reasonable diligence because it "reach[ed] out to Trystar when irregularities were noticed." But Bierer's initial email to Trystar went unanswered, and Trystar continued to sell directly to Bierer's customers. While Bierer raised the issue to its own sales team—including Kennerly—and sent another unanswered email to Trystar, it took no further steps to inquire why Trystar suddenly began to usurp its sales. This does not constitute reasonable diligence. Unconvincingly, Bierer relies on the subjective belief that Trystar was acting legally to shield itself against the discovery rule. It argues a jury must decide whether it reasonably attributed its loss of sales to legitimate competition rather than an "unknown side agreement between Trystar and Kennerly." However, reasonable diligence would have uncovered the existence of the "side agreement" between Kennerly and Trystar, if not in 2013 when these emails were sent, then certainly by 2015 or 2016 when Bierer's relationship with Kennerly began to sour. As explained above, it took one phone call in 2018 to learn of the sales agreement between Kennerly and Trystar. Had Bierer made a similar call when it sent the 2013 emails, Bierer would have known of its potential claim against Trystar years before April

15, 2018.  For this reason, we hold the trial court did not err by finding Bierer's claims against Trystar were barred by the statutes of limitations.

## II.    Fraudulent Concealment

"In South Carolina, a defendant may be estopped from claiming the statute of limitations as a defense if some conduct or representation by the defendant has induced the plaintiff to delay in filing suit."  *Hedgepath v. Am. Tel. & Tel. Co.*, 348 S.C. 340, 360, 559 S.E.2d 327, 338 (Ct. App. 2001); *see also Doe v. Bishop of Charleston*, 407 S.C. 128, 140, 754 S.E.2d 494, 500–01 (2014) ("Deliberate acts of deception by a defendant calculated to conceal from a potential plaintiff that he has a cause of action toll the statute of limitations.").  "[S]ummary judgement is proper where there is no evidence of conduct on the defendant's part warranting estoppel." *Hedgepath*, 348 S.C. at 361, 559 S.E.2d at 339.[4]  "South Carolina cases have applied estoppel in a number of different situations involving the statute of limitations." *Maher v. Tietex Corp.*, 331 S.C. 371, 380, 500 S.E.2d 204, 209 (Ct. App. 1998).

> The elements of estoppel as to the party estopped are (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts.  As to the party claiming estoppel, the elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; and (2) reliance upon the conduct of the party estopped.

*Id.* at 381, 500 S.E.2d at 209 (quoting *Brayboy v. Ewing*, 311 S.C. 272, 273, 428 S.E.2d 731, 732 (Ct. App. 1993)).

Bierer does not argue that Travis or Trystar engaged in fraudulent concealment.  Rather, it claims Kennerly's conduct must be imputed to Travis and Trystar as their agent.  It is true that a principal can be liable for the frauds, concealments, and misrepresentations of an agent in the course of employment, even if the principal did not authorize, justify, or participate in the misconduct. *West v. Service Life & Health Ins. Co.*, 220 S.C. 198, 202, 66 S.E.2d 816, 817 (1951).  Bierer claims that Kennerly fraudulently concealed his "illegitimate" relationships with

---

[4] Bierer does not characterize its fraudulent concealment argument as an estoppel claim.  However, the law of equitable estoppel appropriately frames the argument.

Travis and Trystar by directly lying to Bierer about their existence and that, because Kennerly was the "primary sales channel" for Travis and Trystar, they are liable for this concealment even if it was unauthorized. But even if we assume an agency relationship existed, Bierer's argument fails because Bierer presents no evidence that Kennerly's alleged fraud fell within the scope of this relationship.[5]

In fact, the record does not contain any facts to suggest that any alleged fraud by Kennerly occurred within the scope of an agency relationship with Travis and/or Trystar. The record is clear that Travis held Kennerly out publicly as its employee. Similarly, the record indicates that Trystar made no efforts to conceal its employment relationship with Kennerly. As the trial court stated, "The mere assertion that Kennerly was an agent of Trystar and/or Travis in some capacity is not evidence [that he] concealed his efforts on Trystar's or Travis's behalf." For this reason, and because the record contains no evidence of fraudulent concealment by Travis or Trystar themselves, the trial court did not err by finding that fraudulent concealment did not toll the statutes of limitations on Bierer's claims.

## CONCLUSION

Accordingly, the trial court's grant of both Respondents' motions for summary judgement is

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

[5] To the extent that Bierer argues Kennerly acted under apparent authority to conceal these relationships, this argument fails because apparent authority can only be established by the principal, not the agent. *See, e.g.*, *Shropshire v. Prahalis*, 309 S.C. 70, 71, 419 S.E.2d 829, 830 (Ct. App. 1992). Bierer cannot argue Kennerly acted under apparent authority while also arguing it was unaware of the relationship between agent and principal.