# The Supreme Court of South Carolina

Stokes-Craven Holding Corp., d/b/a Stokes-Craven Ford, Appellants,

v.

Scott L. Robinson and Johnson McKenzie & Robinson, LLC, Respondents.

Appellate Case No. 2013-001452

---

## ORDER

---

After careful consideration of Respondents' petition for rehearing, the Court grants the petition for rehearing, dispenses with further briefing, and substitutes the attached opinions for the opinions previously filed in this matter.

s/ Costa M. Pleicones            C.J.

s/ Donald W. Beatty               J.

s/ John W. Kittredge              J.

s/ Kaye G. Hearn                 J.

s/ Jean H. Toal                  A.J.

Columbia, South Carolina
May 25, 2016

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Stokes-Craven Holding Corp., d/b/a Stokes-Craven Ford, Appellant,

v.

Scott L. Robinson and Johnson McKenzie & Robinson, LLC, Respondents.

Appellate Case No. 2013-001452

———————

Appeal From Clarendon County
George C. James, Jr., Circuit Court Judge

———————

Opinion No. 27572
Heard December 10, 2014 – Refiled May 25, 2016

———————

## REVERSED AND REMANDED

———————

Andrew K. Epting, Jr. and Michelle Nicole Endemann, both of Andrew K. Epting, Jr., L.L.C., of Charleston, for Appellant.

Susan Taylor Wall and Henry Wilkins Frampton, IV, both of McNair Law Firm, P.A., of Charleston, for Respondent Scott Lamar Robinson; Warren C. Powell, Jr., of Bruner Powell Wall & Mullins, L.L.C., of Columbia, for Respondent Johnson McKenzie & Robinson, L.L.C.

———————

**JUSTICE BEATTY:** In this legal malpractice case, Stokes-Craven Holding Corporation d/b/a Stokes-Craven Ford ("Stokes-Craven") appeals the circuit court's order granting summary judgment in favor of Scott L. Robinson and his law firm, Johnson, McKenzie & Robinson, L.L.C., (collectively "Respondents") based on the expiration of the three-year statute of limitations. Stokes-Craven contends the court erred in applying this Court's decision in *Epstein v. Brown*, 363 S.C. 372, 610 S.E.2d 816 (2005),[1] and holding that Stokes-Craven knew or should have known that it had a legal malpractice claim against its trial counsel and his law firm on the date of the adverse jury verdict rather than after this Court affirmed the verdict and issued the remittitur in *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 691 S.E.2d 135 (2010). We overrule *Epstein*, reverse the circuit court's order, and remand the matter to the circuit court for further proceedings consistent with this opinion.

## I.      Factual / Procedural History

Donald C. Austin filed suit against Stokes-Craven, an automobile dealership, after he experienced problems with his used truck and discovered the vehicle had sustained extensive damage prior to the sale. *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 691 S.E.2d 135 (2010). In his Complaint, Austin alleged the following causes of action:  revocation of acceptance, breach of contract, negligence, constructive fraud, common law fraud, violation of the South Carolina Motor Vehicle Dealer's Act (the "Dealer's Act"), violation of the South Carolina Unfair Trade Practices Act ("UTPA"), and violation of the Federal Odometer Act. Based on these claims, Austin sought actual damages, punitive damages, prejudgment interest, and attorney's fees and costs. *Id.* at 35, 691 S.E.2d at 141-42. Stokes-Craven was represented by Scott L. Robinson of Johnson, McKenzie & Robinson, L.L.C. throughout the trial proceedings. On August 16, 2006, after a three-day trial, the jury found in favor of Austin and awarded $26,371.10 in actual damages and $216,600 in punitive damages. *Id.* at 35, 691 S.E.2d at 142.

Austin and Stokes-Craven filed cross-appeals to this Court. Although Robinson was listed as counsel of record on the appellate pleadings, Stokes-Craven had employed attorneys with Young, Clement, Rivers, L.L.P. to represent it during

---

[1]   *See Epstein*, 363 S.C. at 381, 610 S.E.2d at 820 (rejecting the continuous-representation rule and affirming the dismissal of a legal malpractice case based on the expiration of the statute of limitations on the ground the three-year limitations period began to run on the date that the adverse verdict was entered against claimant).

the course of the appeal. On March 8, 2010, a majority of this Court affirmed the jury's verdict and held that: (1) there was no prejudicial abuse of discretion in admitting certain challenged testimony; (2) Austin offered proof of actual damages in the amount of $26,371.10; (3) Austin failed to prove Stokes-Craven violated the Federal Odometer Act with the requisite intent to defraud him as to the mileage of the truck; (4) the verdicts of fraud and violation of the UTPA were not inconsistent; and (5) there was evidence to support the jury's award of $216,000 in punitive damages. *Id.* at 59, 691 S.E.2d at 154. This Court issued the remittitur on April 21, 2010.[2]

On August 16, 2010, Stokes-Craven filed a legal malpractice action against Respondents, alleging negligence and breach of fiduciary duty in trial counsel's representation of Stokes-Craven both prior to and during the trial. Specifically, Stokes-Craven alleged that trial counsel failed to: adequately investigate the facts of the case; prepare or serve written discovery; depose witnesses; obtain copies of the plaintiff's experts' curricula vitae; prepare a pretrial brief, trial exhibits, voir dire, and requests to charge; preserve certain evidentiary issues for appellate review; notify Stokes-Craven's insurance carrier about the claims; and settle the case prior to the jury verdict. Based on these purported errors, Stokes-Craven claimed the jury returned the adverse verdict. Respondents generally denied the allegations and asserted several defenses, including that Stokes-Craven's claims were barred by the expiration of the three-year statute of limitations.

Subsequently, Respondents filed motions for summary judgment. Stokes-Craven filed a cross-motion for partial summary judgment and a motion to compel discovery of Respondents' professional liability policy applications for the years 2002 through 2012, all correspondence between Respondents and their malpractice insurer, and the billing records for computer research from any research provider used by Respondents for the years 2003 through 2006.

Following a hearing, the circuit court granted Respondents' motions for summary judgment on the ground Stokes-Craven's legal malpractice claim was barred by the expiration of the statute of limitations. In so ruling, the court concluded that Dennis Craven, as agent of Stokes-Craven, had notice of the claim

---

[2] In a related appeal, this Court (1) affirmed the circuit court's order that entered judgment in favor of Austin for his requested trial-level fees, and (2) remanded the matter to the circuit court to determine what amount of appellate and post-appellate fees should be awarded to Austin. *Austin v. Stokes-Craven Holding Corp.*, 406 S.C. 187, 750 S.E.2d 78 (2013).

on August 16, 2006, the date of the jury's adverse verdict. Referencing portions of Craven's deposition testimony, the court determined that Craven's testimony as a whole indicated that he was aware that he might have a legal malpractice claim against Respondents because Craven: knew at the time of trial that counsel had not contacted and interviewed crucial witnesses prior to trial; was not shown the defendants' interrogatory responses until the day of trial; had not been prepared for cross-examination; and knew that counsel failed to settle the case despite the admission by Stokes-Craven that it "had done something wrong." The court also noted that Craven acknowledged the jury's verdict presented a "serious problem" for Stokes-Craven. Citing *Epstein*, the court found that Craven's knowledge of counsel's "shortcomings" and other "actionable errors" constituted evidence that Craven knew at the time of the verdict that he might have a claim against trial counsel.

The court also held that the doctrines of equitable estoppel and equitable tolling were inapplicable. In terms of equitable estoppel, the court found "nothing in the record to support the conclusion that [Respondents] did anything to mislead Stokes-Craven" or that Robinson "engaged in any conduct to prevent Stokes-Craven from filing a malpractice action." The court further found Stokes-Craven could not invoke equitable tolling because it failed to present evidence of an "extraordinary event" beyond its control that prevented it from timely filing its legal malpractice action.

Because the court granted Respondents' motions for summary judgment, it noted that it was unnecessary to rule on Stokes-Craven's motion to compel discovery. However, in the event the decision on summary judgment was overturned on appeal, the court proceeded to rule on the motion. Initially, the court found the correspondence between Respondents and their malpractice carrier was not discoverable as it was prepared in anticipation of or during litigation. The court further determined that Stokes-Craven had not established the need for this information. Although the court ruled Respondents' professional liability policy applications were discoverable, the court stated that any "issues of ultimate admissibility" would be left to the trial judge.

Stokes-Craven appealed the circuit court's order and filed a motion to argue against precedent pursuant to Rule 217, SCACR. This Court granted Stokes-Craven's motion to argue against *Epstein*.

## II.    Standard of Review

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP; *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).  On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).

## III.    Discussion

### A.    Commencement of the Statute of Limitations

Stokes-Craven asserts the circuit court erred in holding as a matter of law that the statute of limitations began to run on the date of the adverse jury verdict against Stokes-Craven.  Contrary to the circuit court's characterization of Craven's testimony, Stokes-Craven notes that Craven "repeatedly testified that, at the time of the trial, he had never been sued before, had never participated in litigation, and had no idea what an attorney should or should not do to prepare a case for trial." Based on this testimony, Stokes-Craven maintains Craven did not know or could not have known that it might have a claim for legal malpractice on the date the verdict was rendered.

Stokes-Craven further argues the court erred in relying on *Epstein* as it is not only factually distinguishable from the instant case but is no longer viable precedent.  Stokes-Craven requests that this Court overrule its decision in *Epstein* and adopt a bright-line rule that the statute of limitations in a legal malpractice case does not commence until the remittitur has been issued in the underlying lawsuit.

A claimant in a legal malpractice action must establish four elements:  (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach.  *Holmes v. Haynsworth, Sinkler & Boyd, P.A.*, 408 S.C. 620, 636, 760 S.E.2d 399, 407 (2014).  Furthermore, a claimant is required to demonstrate that "he or she 'most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice.'"  *Doe v. Howe,* 367 S.C. 432,

442, 626 S.E.2d 25, 30 (Ct. App. 2005) (quoting *Summer v. Carpenter,* 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997)).

The statute of limitations for a legal malpractice action is three years.  S.C. Code Ann. § 15-3-530(5) (2005) (stating the statute of limitations for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law" is three years); *see Berry v. McLeod,* 328 S.C. 435, 444-45, 492 S.E.2d 794, 799 (Ct. App. 1997) (concluding that section 15-3-530(5) of the South Carolina Code provides a three-year statute of limitations for legal malpractice actions).  Under the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist.  *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct. App. 1989); *see* S.C. Code Ann. § 15-3-535 (2005) ("[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").  "This standard as to when the limitations period begins to run is *objective* rather than subjective."  *Burgess*, 300 S.C. at 186, 386 S.E.2d at 800.  "Therefore, the statutory period of limitations begins to run when a person *could or should have known*, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto."  *Id.*

"Statutes of limitations are not simply technicalities."  *Kelly v. Logan, Jolley & Smith, L.L.P.*, 383 S.C. 626, 632, 682 S.E.2d 1, 4 (Ct. App. 2009).  "On the contrary, they have long been respected as fundamental to a well-ordered judicial system."  *Id.*  "Statutes of limitations embody important public policy concerns as they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs."  *Id.*  "One purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his or her rights."  *Id.* (citations omitted).  "Another purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation."  *Id.* "Statutes of limitations are, indeed, fundamental to our judicial system."  *Id.* (citation omitted).

## 1.    *Epstein*

As noted by the circuit court and the parties, the key case in the instant dispute is *Epstein*.  In *Epstein*, a jury returned a verdict for a wrongful death and survival action on February 18, 1998 against Dr. Franklin Epstein in a medical-

malpractice action that arose out of the death of one of his patients following spinal surgery. *Epstein*, 363 S.C. at 374, 610 S.E.2d at 817. David Brown represented Epstein throughout the trial and filed a notice of appeal after the jury verdict. *Id.* at 374-75, 610 S.E.2d at 817. Although Brown remained counsel of record during the appeal, Epstein was represented on appeal by Stephen Groves, John Hamilton Smith, and Steven Brown. *Id.* at 375, 610 S.E.2d at 817. The Court of Appeals affirmed the verdicts on July 31, 2000 in *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct. App. 2000). *Id.* This Court denied Epstein's petition for a writ of certiorari in January 2001. *Id.*

On January 9, 2002, Epstein filed a legal malpractice claim against David Brown in which he alleged breach of fiduciary duty, negligence, and breach of contract. *Epstein*, 363 S.C. at 375, 610 S.E.2d at 817. In terms of specific deficiencies, Epstein asserted that Brown was negligent in failing to conduct an adequate investigation, failing to advise him to settle, forgetting to call expert witnesses, and adopting a defense contrary to Epstein's medical opinion. *Id.* at 376, 610 S.E.2d at 818. Brown moved for summary judgment on the ground that Epstein failed to commence the action within the applicable three-year statute of limitations. *Id.* at 375, 610 S.E.2d at 817. The circuit court found the majority of the damages alleged by Epstein stemmed from the adverse jury verdict, and the damages to Epstein's reputation resulting from the publicity were all damages suffered at the time of the verdict. *Id.* at 376, 610 S.E.2d at 818. The court concluded that, although these damages might have been mitigated by a successful appeal, they could not have been wholly eliminated by a reversal of the jury's verdict. *Id.* Accordingly, the circuit court ruled the statute of limitations began to run, at the latest, on February 18, 1998, the date of the jury's verdict. *Id.* at 375, 610 S.E.2d at 817. As a result, the court found the action was untimely and granted Brown's motion for summary judgment. *Id.* Epstein appealed the circuit court's order to this Court. *Id.*

Justice Waller, who was joined by Justices Moore and Burnett, affirmed the circuit court's order. *Epstein*, 363 S.C. at 383, 610 S.E.2d at 821-22. In reaching this decision, the majority declined to adopt the continuous-representation rule, which permits the statute of limitations to be tolled during the period an attorney continues to represent the client on the same matter out of which the alleged legal malpractice arose. *Id.* at 380, 610 S.E.2d at 820. Instead, the majority chose to strictly adhere to the discovery rule set forth by the Legislature. *Id.*

The majority explained its decision by comparing a legal malpractice action to a medical malpractice action. *Epstein*, 363 S.C. at 377, 610 S.E.2d at 819.

Despite the "very legitimate policy rationales in favor of adoption of a continuous treatment rule" in medical malpractice cases, the majority noted that our appellate courts had declined to adopt it because the "Legislature [had] set absolute time restrictions for the bringing of medical malpractice actions in the statutes of repose both for medical malpractice and for persons operating under disability." *Id.* at 378, 610 S.E.2d at 819. The majority also noted that "numerous jurisdictions" had refused to adopt the continuous-representation rule. *Id.* at 379, 610 S.E.2d at 819.

Additionally, the majority disagreed with Epstein's alternative argument that, absent applying the continuous-representation rule, the limitations period did not begin to run until the Court denied certiorari in January 2001. *Epstein*, 363 S.C. at 380-81, 610 S.E.2d at 820. The majority explained that "those jurisdictions which decline to adopt the continuous representation rule tend to hold that a plaintiff may institute a malpractice action prior to the conclusion of the appeal." *Id.* at 380, 610 S.E.2d at 820.

The majority also rejected Epstein's argument that appealing the ruling in the medical malpractice action against him while filing a legal malpractice claim against Brown would cause him to argue inconsistent positions in two different courts. *Epstein*, 363 S.C. at 381, 610 S.E.2d at 821. The majority maintained that "there are measures which may be taken to avoid such inconsistent positions." *Id.* at 381-82, 610 S.E.2d at 821.

Ultimately, the majority applied the discovery rule and found that Epstein "clearly knew, or should have known he might have had some claim against Brown at the conclusion of his trial." *Epstein*, 363 S.C. at 382, 610 S.E.2d at 821. The majority reasoned that the damages claimed by Epstein were "largely those to his reputation" and the claims he raised in his Complaint were "primarily related to trial and pre-trial errors." *Id.* The majority also noted that trial counsel conceded during oral argument on the summary judgment motion that "some of the allegations down there, your Honor, were within the man's knowledge when the verdict came in." *Id.* at 382-83, 610 S.E.2d at 821. Finally, the majority referenced a letter from Epstein to his appellate attorney, Steven Groves, in which Epstein indicated that he would not deal with Brown and that he believed Brown's representation "was so egregiously lacking." *Id.* at 383, 610 S.E.2d at 821. The majority concluded that it was "patent Dr. Epstein knew, or should have known, of a possible claim against Brown long before this Court denied certiorari in January 2001." *Id.*

Then-Chief Justice Toal dissented as she would have adopted "a bright-line rule that the statute of limitations does not begin to run in a legal malpractice

action until an appellate court disposes of the action by sending a remittitur to the trial court." *Epstein*, 363 S.C. at 383, 610 S.E.2d at 822. Although Justice Toal agreed with the application of the discovery rule, she disagreed with the majority's holding that Epstein should have known of the existence of a cause of action arising from Brown's alleged malpractice at the conclusion of the trial. *Id.* at 384, 610 S.E.2d at 822. Instead, Justice Toal found "there was no evidence that [Epstein] [was] injured as a result of [Brown's] alleged malpractice until the court of appeals disposed of the case by sending a remittitur to the trial court." *Id.*

Chief Justice Pleicones concurred in the majority's rejection of the continuous-representation rule and the retention of the discovery rule; however, he dissented as he believed that Brown should have been estopped from asserting the statute of limitations as a defense. *Epstein*, 363 S.C. at 384, 610 S.E.2d at 822. Justice Pleicones pointed out that: (1) Brown affirmatively represented to Epstein that the adverse verdict had resulted from errors of law committed by the trial judge and, in turn, affected the jury's fact-finding role; and (2) Brown remained nominally as counsel to Epstein throughout the appeal of the verdict. *Id.* Justice Pleicones concluded that Brown's representations and his presence on the appellate team "reasonably induce[d] Epstein's forbearance." *Id.* at 384-85, 610 S.E.2d at 822.

### 2. Propriety of *Epstein*

Our appellate courts for the past eleven years have continued to rely on the decision in *Epstein*.[3] However, *Epstein* is not without its critics. *See* James L. Floyd, III, *South Carolina Tort Law: For Whom The Statute of Limitations Tolls−The Epstein Court's Rejection of the Continuous Representation Rule*, 57 S.C. L. Rev. 643 (2006). In this article, the author identified what he perceived to be fundamental flaws in the majority's analysis in *Epstein*. Specifically, the author found that the majority's reasoning and holding were questionable "because [of]: (1) the differences between the statute of limitations governing legal malpractice actions and the statute of repose governing medical malpractice actions, (2) the

---

[3] *See, e.g.*, *Holmes v. Haynsworth, Sinkler & Boyd, P.A.*, 408 S.C. 620, 760 S.E.2d 399 (2014) (citing *Epstein* and affirming the circuit court's ruling that legal malpractice claims were barred by the expiration of the statute of limitations); *Kelly v. Logan, Jolley & Smith, L.L.P.*, 383 S.C. 626, 682 S.E.2d 1 (Ct. App. 2009) (citing *Epstein* and affirming grant of summary judgment in favor of attorneys in legal malpractice action based on the expiration of the statute of limitations).

strength and applicability of the secondary authority upon which the *Epstein* court relied, and (3) *Epstein*'s operative facts." *Id.* at 654.

Although the author distinguished the secondary authority relied on by the majority and noted that *Epstein* was limited to its facts, his primary challenge was to the majority's reliance on the statute of repose in medical malpractice actions. Specifically, the author stated that:

> neither section 15-3-535 nor section 15-3-530(5) create a statute of repose governing legal malpractice actions. Instead, those sections create a general three-year statute of limitations in legal malpractice actions. This distinction may indicate the South Carolina Legislature is unwilling to create the same "absolute time limit" for legal malpractice actions which is observed in medical malpractice actions.

*Id.* at 656 (footnotes omitted). In addition to these distinctions, the author opined that the adoption of the "continuous representation rule would protect the sanctity of the attorney-client relationship" because a client should be able to rely on his attorney's advice, particularly where the attorney suggests filing an appeal of the underlying lawsuit. *Id.* at 658.

Notably, *Epstein* represents a minority position in this country as the majority of courts in other jurisdictions have adopted the continuous-representation rule. *See* 3 Ronald E. Mallen & Allison Martin Rhodes, *Legal Malpractice*, § 23:45 (2015) (discussing state cases which have adopted the majority and minority positions regarding the continuous-representation rule; identifying *Epstein* as within the minority position); George L. Blum, Annotation, *Attorney Malpractice−Tolling or Other Exceptions to Running of Statute of Limitations*, 87 A.L.R.5th 473, § 4 (2001 & Supp. 2015) (discussing state cases that have applied or found inapplicable the continuous-representation doctrine); *see also* George L. Blum, Annotation, *When Statute of Limitations Begins to Run on Action Against Attorney Based upon Negligence−View that Statute Begins to Run from Time Client Discovers, or Should Have Discovered, Negligent Act or Omission−Application of Rule to Conduct of Litigation and Delay or Inaction in Conducting Client's Affairs*, 14 A.L.R. 6th 1, § 8 (2006 & Supp. 2015) (collecting state and federal cases that applied or found inapplicable the discovery rule and highlighting *Epstein*).

The facts of the instant case present us with an appropriate opportunity to address the criticism and conflict that has arisen out of our decision in *Epstein*. As legislatively mandated, we begin our analysis with the well-established discovery

rule. Pursuant to this rule, all legal malpractice actions must be commenced within three years after the claimant *knew or* by the exercise of reasonable diligence *should have known* that he or she had a cause of action. *See* S.C. Code Ann. § 15-3-535 (2005) ("[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").

Thus, a claimant seeking recovery for a legal malpractice claim is constrained by two constants: (1) filing the claim within the statute of limitations,[4] and (2) establishing the four requisite elements of his or her claim. Because a statute of limitations operates on remedies, the limitation period cannot start until the client has a cause of action that has accrued. *See* 3 Ronald E. Mallen & Allison Martin Rhodes, *Legal Malpractice* § 23:14 (2015) ("Since a statute of limitations operates on remedies, the limitation period cannot start until the client has a cause of action that has accrued. Thus, 'accrual' means the existence of a legally cognizable cause of action.").

As evidenced by this case, the key question is when the claimant's cause of action accrues to trigger the running of the three-year statute of limitations. The answer to this question is complicated by the seemingly endless factual scenarios surrounding the underlying claim of a legal malpractice cause of action. For example, legal malpractice claims may stem from matters involving litigation or negotiated settlements while others may arise out of matters involving the probate of a will or a divorce. Further complicating the determination of when a cause of action accrues is if the claimant pursues an appeal of an unfavorable ruling, such as in the instant case.

Our decision regarding the accrual date must also take into consideration the preservation of the attorney-client relationship as well as the public policy that is fundamental to the efficient management of our judicial system. Clearly, if a client files a legal malpractice cause of action while the client is still represented by counsel during an appeal, the attorney-client relationship is compromised and there are simultaneous lawsuits advocating conflicting positions.

While the legal bases and policy reasons for adopting the continuous-representation rule are persuasive, we find its application may be problematic because we can foresee factual scenarios where it is unclear exactly at what point

---

[4] "A legal malpractice cause of action is governed by the applicable statute of limitations whether it sounds in tort, contract or fraud." 1 S.C. Jur. *Attorney & Client*, § 69 (Supp. 2016) (citing section 15-3-530 of the South Carolina Code).

trial counsel ends its representation. Moreover, we acknowledge the merit of the remittitur rule espoused by the dissent in *Epstein* as it offers a clear and definitive date for the accrual of a legal malpractice cause of action. We, however, decide to adopt a position that is analogous to the remittitur rule but is strictly based on existing appellate court rules.

Pursuant to Rule 205, the service of a notice of appeal divests the trial court of jurisdiction over matters affected by the appeal as it states:

> Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal; the lower court or administrative tribunal shall have jurisdiction to entertain petitions for writs of supersedeas as provided by Rule 241. Nothing in these Rules shall prohibit the lower court, commission or tribunal from proceeding *with matters not affected by the appeal*.

Rule 205, SCACR (emphasis added). Rule 241(a), a corollary rule that governs matters stayed on appeal, provides:

> As a general rule, the service of a *notice of appeal in a civil matter acts to automatically stay matters decided in the order, judgment, decree or decision on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree or decision.* This automatic stay continues in effect for the duration of the appeal unless lifted by order of the lower court, the administrative tribunal, appellate court, or judge or justice of the appellate court. The lower court or administrative tribunal retains jurisdiction over matters not affected by the appeal including the authority to enforce any matters not stayed by the appeal.

Rule 241(a), SCACR (emphasis added).[5]

---

[5] As a general rule, an appeal acts as an automatic stay. However, exceptions to this rule are found in Rule 241(b), in statutes, court rules, and case law. *See* Rule 241(b), SCACR (providing eleven exceptions to the general rule that are found in statutes, court rules, and case law); Rule 246, SCACR (identifying rules regarding the stay of a sentence in a criminal case); *see, e.g.,* S.C. Code Ann. § 18-9-130(A)(1) (2014) ("A notice of appeal from a judgment directing the payment of money does not stay the execution of the judgment unless the presiding judge before whom the judgment was obtained grants a stay of execution.").

As previously stated, a legal malpractice cause of action is predicated on an injury or damage to a client caused by an alleged breach of duty by the client's attorney. This predicate injury or damage may take many forms, including one that stems from a favorable court ruling or successful yet insufficient award.[6]

However, the case that we address today is a legal malpractice cause of action that is predicated on an injury or damage caused by the failure of an underlying suit due to an attorney's alleged malpractice. In that particular scenario, there can be no legal malpractice cause of action without an adverse verdict, judgment, or ruling. Thus, if a client appeals the matter in which the alleged malpractice occurred, any basis for the legal malpractice cause of action is stayed by Rule 241(a) while the appeal is pending.

Furthermore, Rule 205 divests the lower court or administrative tribunal of jurisdiction over "*matters affected by the appeal*," which necessarily would include a legal malpractice cause of action that is based on the outcome of the appealed verdict, judgment, or ruling. *See Tillman v. Oakes*, 398 S.C. 245, 255, 728 S.E.2d 45, 51 (Ct. App. 2012) ("[T]he lower court's power to proceed is determined by whether the issue sought to be litigated in the lower court during the appeal is a 'matter affected by the appeal' under Rules 205 and 241(a)."); *Black's Law Dictionary* 68 (10th ed. 2014) (defining "affect" as "to produce an effect on; to influence in some way").

---

Further, after the service of a notice of appeal, any party may move for the lower court, administrative tribunal, appellate court, or judge or justice of the appellate court for an order lifting the automatic stay in cases that involve the general rule. Rule 241(c)(1), SCACR; *see Lancaster v. Georgia-Pacific Corp.*, 403 S.C. 136, 138, 742 S.E.2d 867, 868 (2013) (An "action on a settlement may not be taken by the lower court, except with regard to matters not affected by the appeal, while the matter is pending before this Court. The parties must first seek to have the matter remanded to the lower court.").

[6] *See, e.g.*, *Harris Teeter, Inc. v. Moore & Van Allen, P.L.L.C.*, 390 S.C. 275, 701 S.E.2d 742 (2010) (affirming grant of summary judgment in favor of law firm for legal malpractice action arising out law firm's alleged failure to settle dispute prior to arbitration); *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997) (analyzing legal malpractice action arising out of attorney's alleged failure to include the South Carolina Department of Highways and Public Transportation as a defendant in plaintiff's settlement for injuries sustained during a car accident).

Consequently, until the appeal is resolved against the client, there is no legally cognizable cause of action for an attorney's alleged malpractice. Upon resolution of the appeal, a cause of action for legal malpractice accrues triggering the statute of limitations.[7]

This position is consistent with the discovery rule as a client either knows or should know that a cause of action arises out of his attorney's alleged malpractice if the appeal is unsuccessful. *See Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) ("According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct."). In other words, a client knows or should know that he or she has a legally cognizable cause of action for legal malpractice at the conclusion of the appeal.

While this approach may be perceived as impermissibly requiring a person to have actual knowledge of a potential claim before the statute of limitations begins to run, we find that it is mandated by our appellate court rules and, as a result, effectuates the objective standard provided by the Legislature. *See Black's Law Dictionary* 1624 (10th ed. 2014) (An objective standard is defined as "[a] legal standard that is based on conduct and perceptions *external to a particular person*." (emphasis added)); *id.* at 1529 (A rule is generally defined as "an established and authoritative standard or principle; a general norm mandating or guiding conduct or action in a given type of situation.").[8]

---

[7] Generally, this will occur when the appellate court issues the remittitur. *See Lancaster v. Georgia-Pacific Corp.*, 403 S.C. 136, 137, 742 S.E.2d 867, 868 (2013) ("Pursuant to Rule 205, SCACR, upon the service of a notice of appeal, the appellate [c]ourt has exclusive jurisdiction over the appeal, with the exception of matters not affected by the appeal. The appellate court retains jurisdiction until the remittitur is sent to the lower court.").

[8] We find additional support for our decision in the analogous civil proceeding of Post-Conviction Relief ("PCR"). Similar to a legal malpractice claimant, a PCR applicant is challenging the effectiveness of his or her trial counsel. Notably, a PCR application must be filed within one year after the entry of a judgment of conviction, *or if there is an appeal, "within one year after the sending of the*

Our decision warrants overruling *Epstein* because the holding in that case is contrary to Rules 205 and 241, SCACR. In *Epstein*, the Court affirmed the dismissal of a legal malpractice case based on the expiration of the three-year statute of limitations, which the Court found began to run on the date that the adverse verdict was entered against claimant. *Epstein*, 363 S.C. at 383, 610 S.E.2d at 821. Yet, until the Court of Appeals affirmed the adverse verdict on appeal, there was no damage or harm to claimant for which to establish a claim for legal malpractice.

Applying this rule to the facts of the instant case, we find the circuit court erred in granting Respondents' motions for summary judgment because the stay, pending appeal, was not lifted and Stokes-Craven's lawsuit was timely filed after this Court affirmed the verdict against Stokes-Craven and issued the remittitur in *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 691 S.E.2d 135 (2010).[9] Accordingly, we reverse the circuit court's order granting Respondents' motions for summary judgment.

## B.    Motion to Compel Discovery

Having reversed the circuit court's grant of summary judgment in favor of Respondents, the question becomes whether the court erred in denying a portion of Stokes-Craven's motion to compel. Stokes-Craven claims the circuit court erred in holding that Respondents' communications with their legal malpractice carrier were not discoverable. In particular, Stokes-Craven contends the documents are not protected by the work-product doctrine because they were "prepared in the ordinary course of insurance business" and not in anticipation of litigation. Additionally, Stokes-Craven maintains it has a "substantial need" for these documents and that it is unable to obtain equivalent information by other means.

A trial court's rulings in matters related to discovery generally will not be disturbed on appeal in the absence of a clear abuse of discretion. *Dunn v. Dunn*, 298 S.C. 499, 381 S.E.2d 734 (1989). An abuse of discretion occurs when the trial

---

*remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later*." S.C. Code Ann. § 17-27-45(A) (2014).

[9]   In view of our decision, we need not reach Stokes-Craven's contention that equitable doctrines precluded the application of the statute of limitations. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

court's order is controlled by an error of law or when there is no evidentiary support for the trial court's factual conclusions. *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 681 S.E.2d 885 (2009).

"The attorney work product doctrine protects from discovery documents prepared in anticipation of litigation, unless a substantial need can be shown by the requesting party." *Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 294, 692 S.E.2d 526, 530 (2010); *see* Rule 26(b)(3), SCRCP (stating, "a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for the trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means"). "Generally, in determining whether a document has been prepared 'in anticipation of litigation,' most courts look to whether or not the document was prepared because of the prospect of litigation." *Tobaccoville,* 387 S.C. at 294, 692 S.E.2d at 530.

We conclude the circuit court abused its discretion in ruling on Stokes-Craven's motion to compel production of communications between Respondents and their malpractice carrier because there was no evidentiary basis to support its factual conclusions. The court failed to conduct an in camera hearing to review the requested information and stated in its summary ruling that it had "not received a privilege log of these communications." Therefore, we find the court lacked sufficient information to determine whether the requested documents were prepared in anticipation of litigation and that Stokes-Craven had a substantial need of the materials in preparation of its case. Accordingly, we direct the circuit court on remand to conduct an in camera hearing, review the requested information, and issue a specific ruling.

## IV.    Conclusion

This case presents us with an appropriate opportunity to reevaluate our decision in *Epstein*. We now overrule *Epstein*. In doing so, we hold that the statute of limitations for a legal malpractice cause of action may be tolled if the client appeals the matter in which the alleged malpractice occurred. We conclude that this rule is mandated by our appellate court rules and, as a result, effectuates the objective standard provided by the Legislature.

Applying this rule to the facts of the instant case, we find the circuit court erred in granting Respondents' motions for summary judgment because Stokes-Craven's lawsuit was timely filed after this Court affirmed the verdict against Stokes-Craven. Additionally, we find the circuit court abused its discretion in denying Stokes-Craven's motion to compel the production of communications between Respondents and their malpractice carrier given there was no evidence to support the court's ruling.

Based on the foregoing, we reverse the circuit court's order and remand the matter for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**KITTREDGE, HEARN, JJ., and Acting Justice Jean H. Toal, concur. PLEICONES, C.J., concurring in a separate opinion.**

**CHIEF JUSTICE PLEICONES:**  I concur in the decision to reverse the trial court's order granting summary judgment, and to reverse the discovery order  but write separately because I would adhere to our decision in *Epstein v. Brown*, 363 S.C. 372, 610 S.E.2d 816 (2005).  The majority adopts Justice Toal's dissenting view in *Epstein*, but shrouds its decision in discussions of appellate court rules and practices.  As explained below, I would not create a special statute of limitations for legal malpractice cases that is tied to the status of an appeal.[10]

First, I believe the majority unnecessarily expands the meaning of the term "matters affected by the appeal" under Rule 205, SCACR, to include inchoate and speculative collateral lawsuits.  As this Court has explained, Rule 205 provides that an appeal deprives the trial court of jurisdiction to modify issues decided by that court which are the subject of a pending appeal, *e.g.*, *Wingate v. Wingate*, 289 S.C. 574, 347 S.E.2d 878 (1985), or to entertain a settlement agreement, *e.g.*, *Lancaster v. Georgia-Pacific Corp.*, 403 S.C. 136, 742 S.E.2d 867 (2013), absent a remand from the appellate court.  I do not understand how or why a Rule 205 operates to deprive a trial court of jurisdiction over a nonexistent lawsuit.

The majority also reinterprets Rule 241, SCACR, to include inchoate and speculative collateral lawsuits when, by its own term, the rule governs stays only in "matters decided in the order, judgment, decree or decision on appeal. . . ."  Rule 241(a), SCACR.  Further, in footnote 5, the majority reiterates that the Rule permits a party to an appeal which is subject to an automatic stay to "move for the lower court, administrative tribunal, appellate court, or judge or justice of the appellate court for an order lifting  [that stay] . . . ."  I do not understand what the majority contemplates would be the benefit of superseding such a stay vis-à-vis a future malpractice suit, since the majority holds that "until the appeal is resolved against the client, there is no legally cognizable cause of action for an attorney's alleged malpractice."

I would adhere to the discovery rule adopted in *Epstein*, and reverse the trial court's order granting summary judgment because there are unresolved genuine issues of material fact that make that relief inappropriate.  *E.g.*, *McAlhany v. Carter*, 415 S.C. 54, 781 S.E.2d 105 (Ct. App. 2015).  Further, I concur in the majority's decision to reverse the discovery order without prejudice.

---

[10] That the statute of limitations in the Post-Conviction Relief Act, S.C. Code Ann. § 17-27-45(a) (2014), contains a specific post-appeal provision only emphasizes the extraordinary nature of the majority's decision to create a special rule here.