LOCKEMY, C.J.:
In this appeal, Personal Care, Inc., argues the circuit court erred in denying its motion to restore a legal malpractice action against its former attorneys based upon a finding the statute of limitations had expired. Personal Care also contends the circuit court applied an incorrect standard when failing to find the statute of limitations begins to run in a legal malpractice context when the underlying case is resolved against the client. We affirm.
FACTS/PROCEDURAL HISTORY
Personal Care is a medical transport company operating in the Lowcountry. In September 2009, the company retained attorneys Jerry Theos of Uricchio, Howe, Krell, Jacobson, Toporek, Theos, and Kieth, PA, and Cheryl D. Shoun of Taylor, Shoun, Bowley & Byrd (collectively, Respondents) to investigate claims against a former employee, Hattie Askew. According to Personal Care, Askew was using its propriety information to set up a competing company, Low Country Medical Transport, Inc. On September 14, 2009, Personal Care directed Theos to send a letter to Askew demanding she refrain from alleged wrongful activity, including soliciting Personal Care clients and defrauding insurers with illegitimate billing practices. The letter was simultaneously sent to Low Country Dialysis, a third-party medical services provider that frequently employed private medical transport.
On December 10, 2009, Theos filed the underlying action against Askew in Charleston County on behalf of Personal Care (the Askew lawsuit), asserting claims related to Askew's alleged use of Personal Care's propriety and confidential information. Askew filed her answer on March 9, 2010, asserting various defenses as well as a claim of improper venue. In addition, Askew asserted a counterclaim for defamation stemming directly from the publication of Theos's September 14, 2009 letter to Low Country Dialysis.
On March 19, 2010, Shoun sent an email to Bernie Cignavitch, a principal at Personal Care, notifying him they had "received an Answer and Counterclaim on behalf of [Askew] in this action" and requesting Personal Care's insurance information for defense and indemnification purposes. Later that day, Shoun's paralegal sent a copy of the pleadings to Cignavitch by email. Thereafter, between March 26, 2010, and June 7, 2010, Shoun sent five separate emails to Cignavitch referencing Askew's answer and counterclaim. In a June 7, 2010 email, Shoun attached a copy of a discovery request she had sent to Askew's attorney that sought information regarding damages "as a result of the *283 letter sent September 14, 2009, as alleged in the Defendant's Counterclaim."[1] That same month, Shoun sent an invoice to Personal Care for fees associated with defending the counterclaim, which Personal Care paid in full.
In July 2010, the circuit court ordered a change of venue from Charleston to Hampton County. On July 12, 2012, following a mediation session, Cignavitch sent an email to Shoun and Theos asking, "Why are they suing me? What did I do wrong? What slander did I commit? ? I don't understand?" Theos replied:
As we previously indicated to you and as we have discussed in the past, in particular during Mediation, [Askew] asserts ... a cause of action for "defamation." The basis for the claim is the letter sent on Personal Care's behalf on September 14, 2009.... As we have previously advised you, we believe and contend that their counterclaim is meritless, as truth is an absolute defense to such a claim.
In August 2012, Theos moved to be relieved as Personal Care's counsel, citing a conflict of interest under Rules 1.7 and 3.7, SCRCP. The motion was based on the belief that Theos could no longer represent Personal Care in the Askew lawsuit given the likelihood he would have to testify regarding the defamation claim precipitated by the September 14, 2009 letter. The circuit court granted the motion in November 2012 but allowed Personal Care sixty days to find new counsel, which they did.
On March 8, 2013, Personal Care commenced a legal malpractice action against Respondents over the handling of the Askew lawsuit. Personal Care did not contemporaneously file an expert affidavit, however, instead claiming it had a "good faith basis to believe the expiration of the statute of limitations is imminent."[2] Personal Care then filed an amended, verified complaint on April 19, 2013, containing the affidavit. In its amended complaint, Personal Care alleged professional negligence premised on the claims that Theos's 2009 letter exposed the company to liability and forced it to incur additional legal costs in defending the counterclaim; Shoun and Theos failed to notify the company of the counterclaim until more than two years after it was filed; Theos's late withdrawal from the case jeopardized Personal Care's ability to pursue and defend the Askew lawsuit; and Theos and Shoun had failed to adequately argue against the change of venue to Hampton County, which resulted in additional travel fees and expenses.
Theos filed an answer on July 9, 2013, generally denying the allegations and moving to dismiss the claims based on the expiration of the statute of limitations. On August 28, 2013, the parties executed a consent order pursuant to Rule 40(j), SCRCP, striking the case from the docket pending the resolution of the Askew lawsuit. The order stipulated:
if the claim is restored within one year from the date of this Order, the statute of limitations shall be tolled as to all consenting parties during the time the case is stricken, and any unexpired portion of the statute of limitations as of the date of this Order shall remain and begin to run on the date the claim is restored.
The Askew Lawsuit was subsequently settled on November 18, 2013.
On August 22, 2014, counsel for Personal Care contacted Theos and received his consent to an order restoring the case to the active docket. On August 27, 2014, Personal Care attempted to file the proposed consent order with the clerk's office, but it was returned for lack of a filing fee and coversheet. On September 4, 2014, Personal Care sent the consent order directly to the circuit court's chambers; however, the proposed order did not contain Shoun's signature as she was not included in the communications discussing the order. Personal Care withdrew *284 the proposed consent order and on September 22, 2014, filed a formal motion to restore pursuant to Rule 40(j). Respondents subsequently submitted memoranda opposing the motion to restore based upon the expiration of the statute of limitations.
At a November 18, 2014 hearing, Respondents argued the motion to restore should be denied because Personal Care failed to abide by the timeline set forth in the August 28, 2013 consent order, and therefore, the statute of limitations had not been tolled. In addition, Respondents submitted multiple exhibits showing they notified Personal Care of the counterclaim at the earliest on March 19, 2010. Personal Care acknowledged its motion to restore was untimely, but argued the statute of limitations had not run, even without the benefit of the tolling provision, because the cause of action accrued on July 12, 2012, when Cignavitch claimed he first learned of the defamation claim. The circuit court disagreed, and on March 3, 2015, issued an order denying the motion. In doing so, the circuit court found the Rule 40(j) tolling provision was contingent on Personal Care filing a motion to restore within one year of the order, i.e., August 28, 2014. Next, relying on the discovery rule outlined in Epstein v. Brown ,[3] the circuit court determined Personal Care had at least constructive notice of the injury on March 19, 2010-the date Shoun notified Personal Care that Askew filed her counterclaim. Consequently, the circuit court denied the motion to restore.
On March 13, 2015, Personal Care filed a motion to reconsider, arguing the circuit court had no basis under Rule 40(j) to find a claim was time-barred and, furthermore, there remained a factual dispute as to the date the cause of action accrued. The circuit court denied the motion, reasoning that nothing in Rule 40(j) prevents a party from challenging a motion to restore on grounds the claim is untimely. Furthermore, the court noted that if it was not allowed to address issues regarding the statute of limitations during a hearing on a motion to restore, then there would be no reason to hold a hearing in the first place as the court would be required to automatically grant every motion to restore. Nevertheless, the court gave the parties fourteen days to supplement the record with additional evidence or live testimony regarding the statute of limitations issue.
Thereafter, Personal Care submitted an affidavit from Cignavitch averring that he did not know the exact nature of the claim until after mediation on July 12, 2012. Both Shoun and Theos filed affidavits attesting they had discussed the defamation claim, as well as the matter of damages, with Cignavitch multiple times between March and June of 2010.
On May 23, 2016, the circuit court entered a modified order, again denying the motion to restore. On May 25, 2016, our supreme court issued its decision in Stokes-Craven Holding Corp. v. Robinson , 416 S.C. 517, 787 S.E.2d 485 (2016), overruling Epstein v. Brown and holding that a legal malpractice cause of action accrues, and the statute of limitations begins to run, upon the resolution of the underlying suit against the client on appeal. On June 13, 2016, the circuit court entered a final order incorporating the Stokes-Craven opinion but again finding the statute of limitations was not tolled following entry of the August 28, 2013 consent order, and thus had expired on March 8, 2013, prior to the filing of the formal motion to restore. This appeal followed.
STANDARD OF REVIEW
"This court reviews questions of law de novo." Proctor v. Steedley , 398 S.C. 561, 573, 730 S.E.2d 357, 363 (Ct. App. 2012). "In other words, a reviewing court is free to decide questions of law with no particular deference to the trial court." Id .
LAW/ANALYSIS
a. Motion to Restore
Personal Care first argues the circuit court erred when, in the context of a Rule 40(j) motion to restore and with no dispositive motion pending, it conducted a sua sponte *285 inquiry into the expiration of the statute of limitations. We disagree.
In interpreting the meaning of the South Carolina Rules of Civil Procedure, this court applies the same rules of construction used to interpret statutes. Green v. Lewis Truck Lines, Inc. , 314 S.C. 303, 304, 443 S.E.2d 906, 907 (1994). If a rule's language is plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the stated meaning should be enforced. See Knotts v. S.C. Dept. of Natural Res. , 348 S.C. 1, 10, 558 S.E.2d 511, 516 (2002).
Rule 40(j) provides:
A party may strike its complaint, counterclaim, cross-claim[,] or third party claim from any docket one time as a matter of right, provided that all parties adverse to that claim, counterclaim, cross-claim[,] or third party claim agree in writing that it may be stricken, and all further agree that if the claim is restored upon motion made within 1 year of the date stricken, the statute of limitations shall be tolled as to all consenting parties during the time the case is stricken, and any unexpired portion of the statute of limitations on the date the case was stricken shall remain and begin to run on the date that the claim is restored. A party moving to restore a case stricken from the docket shall provide all parties notice of the motion to restore at least 10 days before it is heard. Upon being restored, the case shall be placed on the General Docket and proceed from that date as provided in this rule.
We do not believe the circuit court committed an error of law in considering the statute of limitations when determining whether to grant the motion to restore. Initially, we note in Maxwell v. Genez , our supreme court expressly rejected the argument that a party may not oppose a motion to restore on grounds the statute of limitations has expired.[4] Furthermore, the purpose of the Rule 40(j) tolling provision is to extend the deadline for filing a claim within the statute of limitations, which naturally requires an inquiry into the date a cause of action accrued and when it will expire. See Goodwin v. Landquest Dev., LLC , 414 S.C. 623, 630, 779 S.E.2d 826, 830 (Ct. App. 2015) ("The effect of [ Rule 40(j) ] is not to set a new deadline, but to extend the statute of limitation[s's] deadline by applying the rule's tolling provision when the motion to restore is made within a year."). Notably, the procedure under Rule 40(j) for restoring a case is not automatic; the rule contemplates the filing of a motion and a hearing before the case can be reinstated. Here, it is undisputed Personal Care filed its motion to restore more than one year after the order striking the case from the active docket. Therefore, at the time of the belated filing, Respondents were no longer bound by the agreement not to challenge the timeliness of the claim. See Maxwell v. Genez , 356 S.C. at 622 n.2, 591 S.E.2d at 28 n.2 ("Parties who consent to strike a claim pursuant to Rule 40(j) agree not to challenge the statute of limitations for one year.").
Personal Care's main grievance is the fact no dispositive motion had been filed prior to the hearing and thus no affirmative defenses were before the court. First, we note Theos did file an answer to the verified complaint asserting a motion to dismiss based on the statute of limitations. Moreover, Personal Care first raised the statute of limitations issue in its complaint by invoking the safe harbor provision in section 15-36-100(C)(1) and averring "a good faith basis to believe the expiration of the statute of limitations is imminent." Nevertheless, we believe this argument ignores the procedural posture of the case as "dismissed." Goodwin , 414 S.C. at 630-32, 779 S.E.2d at 830-31 (explaining that striking a case under Rule 40(j) is the equivalent of dismissing the case). Because Personal Care's motion to restore was, in essence, equivalent to filing a new lawsuit, Respondents could not move for summary judgment until after the case was reinstated. Instead, the only available means to contest the timeliness *286 of the claim was at the hearing on the motion to restore; and to that effect, Respondents submitted memoranda opposing the motion on both procedural and substantive grounds.
Accordingly, rather than this being a sua sponte inquiry into the statute of limitations resulting in a de facto grant of summary judgment against Personal Care, the record indicates the circuit court addressed the issues raised by the parties prior to the hearing. Therefore, as Respondents were within their right to challenge the statute of limitations, and Personal Care had notice the defense would be raised, we find the trial court did not err as a matter of law when considering the statute of limitations as a basis to deny the motion.
b. Statute of Limitations
Next, Personal Care contends the circuit court applied the improper standard in finding the statute of limitations began to run when Askew filed her counterclaim in March 2010. Citing Stokes-Craven , Personal Care argues a malpractice claim accrues on the date an "adverse verdict, judgment, or ruling" is entered against the client in the underlying lawsuit. Finally, Personal Care asserts there is still a question of fact as to the date it knew or should have known it had a claim against Respondents.
Section 15-3-530 of the South Carolina Code (2005) provides for a three-year statute of limitations for legal malpractice lawsuits. "Under the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist." Stokes-Craven , 416 S.C. at 525-26, 787 S.E.2d at 489.
In Stokes-Craven , our supreme court addressed the situation in which a legal malpractice claim is "predicated on an injury or damage caused by the failure of an underlying suit due to an attorney's alleged malpractice." 416 S.C. at 534, 787 S.E.2d at 494. If the client appeals the adverse judgment, however, the court found there can be no legally cognizable action until the appeal is resolved. Id . The court reasoned that under Rule 241(a), SCACR, the filing of a notice of appeal automatically stays matters decided in the judgment; thus, any basis for the legal malpractice claim is also stayed. Id . The court held "the statute of limitations for a legal malpractice cause of action may be tolled if the client appeals the matter in which the alleged malpractice occurred." Id . at 537, 787 S.E.2d at 496.
We do not believe the Stokes-Craven decision eliminated the discovery rule in favor of a separate bright-line rule that all legal malpractice claims accrue on the date an adverse judgment is entered against the client. To the contrary, the case dealt with the "particular scenario" in which a client's injuries are predicated on an adverse judgment that is then appealed. Id . at 534, 787 S.E.2d at 494. In those cases, the appellate rules mandate the matter be stayed until the appeal is resolved. See id . at 537-38, 787 S.E.2d at 496 ("We conclude that this rule is mandated by our appellate court rules and, as a result, effectuates the objective standard provided by the Legislature.").
In this case, Personal Care's cause of action is predicated not on an adverse judgment or the failure of the underlying suit, but on the September 14, 2009 letter that precipitated the defamation counterclaim. This is evident from the face of the complaint itself as well as the fact Personal Care filed its complaint before the Askew lawsuit settled. Moreover, Personal Care alleges it first suffered a financial injury when "it was forced to spend additional funds and commit time and other resources to mitigate the damages caused as a direct and proximate result of [Respondents'] errors." Accordingly, we believe the circuit court correctly found the cause of action accrued on the date Personal Care reasonably ought to have discovered it was injured by Theos's letter, not when the lawsuit settled. See Dean v. Ruscon Corp. , 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) ("According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered."); Holly Woods Ass'n of Residence Owners v. Hiller , 392 S.C. 172, 183, 708 S.E.2d 787, 793 (Ct. App. 2011)
*287 ("The test for whether the injured party knew or should have known about the cause of action is objective rather than subjective.").
Personal Care also claims there is a question of fact as to the date it knew or should have known that a cause of action existed. We disagree. As discussed above, the gravamen of Personal Care's injury is the September 14, 2009 letter and the extra costs it incurred to defend the defamation claim. The evidence before the circuit court showed that starting on March 19, 2010, Respondents sent Personal Care numerous emails referencing the counterclaim, several of which included copies of the pleadings, as well as requests for insurance information so Personal Care could receive coverage for defending the counterclaim. In addition, in June of 2010, Personal Care paid legal fees that were specifically marked as payment for defending the defamation claim. While Personal Care maintains additional discovery is necessary to determine what it actually knew about the counterclaim, there is no dispute regarding the information that was readily available to them as of March 19, 2010. See Burgess v. Am. Cancer Soc., S.C. Div., Inc. , 300 S.C. 182, 185, 386 S.E.2d 798, 799 (Ct. App. 1989) ("A party cannot escape the application of [the discovery rule] by claiming ignorance of existing facts and circumstances, because the law also provides that if such facts and circumstances could have been known to the party through the exercise of ordinary care and reasonable diligence, the same result follows."). Accordingly, we find the circuit court correctly found the cause of action accrued in March 2010, and thus Personal Care's claims are barred by the statute of limitations.
CONCLUSION
Based on the foregoing, the order of the circuit court is
AFFIRMED.
THOMAS and GEATHERS, JJ., concur.

Although Shoun included the pleadings as attachments in several of her emails, nothing in the text of the messages themselves specifically mentioned Askew was seeking monetary damages for defamation.

See S.C. Code Ann. § 15-36-100(B) and (C)(1) (Supp. 2018) (requiring actions for damages alleging professional negligence to include an expert affidavit specifying the negligent acts or omissions claimed to exist unless the plaintiff has a good faith belief the limitations period will expire within ten days of the date of filing).

363 S.C. 372, 382-83, 610 S.E.2d 816, 821 (2005), overruled by Stokes-Craven Holding Corp. v. Robinson , 416 S.C. 517, 535, 787 S.E.2d 485, 494 (2016) (holding the statute of limitations had begun to run in a legal malpractice action when the jury returned an adverse verdict rather than when the appeal was resolved against the client).

See 356 S.C. 617, 622 n.2, 591 S.E.2d 26, 28 n.2 (2003) ("We note the Maxwells assert that, since Genez and Doe agreed to the Rule 40(j) dismissal after the statute of limitations had expired, they waived their right to oppose the motion to restore on grounds of the expiration of the statute of limitations. We disagree. Parties who consent to strike a claim pursuant to Rule 40(j) agree not to challenge the statute of limitations for one year.").