**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1120**

WENDY C. H. WELLIN, on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator,

Plaintiff - Appellant,

v.

THOMAS M. FARACE, Esq., individually and as agent for Nixon Peabody, LLP; NIXON PEABODY, LLP,

Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:16−cv−00414−DCN)

Argued:  September 22, 2021                   Decided:  November 22, 2021

Before MOTZ and AGEE, Circuit Judges, and KEENAN, Senior Circuit Judge.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:**  Badge S. Humphries, GRIFFIN HUMPHRIES LLC, Sullivan's Island, South Carolina, for Appellant.  Robert E. Stepp, ROBINSON GRAY STEPP & LAFFITTE, LLC, Columbia, South Carolina, for Appellees.  **ON BRIEF:**  Keith M. Babcock, David L. Paavola, LEWIS BABCOCK L.L.P., Columbia, South Carolina,  for Appellant. Benjamin R. Gooding, Jasmine D. Smith, Vordman Carlisle Traywick, III, ROBINSON GRAY STEPP & LAFFITTE, LLC, Columbia, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal involves claims by Wendy C.H. Wellin (Mrs. Wellin), the widow of Keith Wellin (Mr. Wellin) and special administrator of the Estate of Keith S. Wellin (the Estate), alleging that Mr. Wellin's attorney engaged in malpractice in November 2009 while providing estate planning services. We consider the narrow question whether the district court erred in awarding summary judgment to the attorney, his law firm, and a related entity on the ground that the Estate's claims were barred by the three-year statute of limitations.

Upon our review, we conclude that the district court erred. The court incorrectly held that an email written by Mrs. Wellin in February 2012 triggered the limitations period. That email did not contain material relating to the substance of the present malpractice claim, which is based on the attorney's alleged failure in 2009 to advise Mr. Wellin fully of potential tax liabilities in implementing an estate-planning strategy.

Additionally, the parties put forth competing evidence regarding whether a person of common knowledge should have been aware that the attorney had given incorrect or misleading tax advice any time before mid-2013, when Mr. Wellin consulted with a new attorney. Because there are disputed issues of material fact regarding the date that the injury was readily discoverable, we vacate the district court's judgment and remand the case for further proceedings.

I.

From 2001 until 2013, attorney Thomas Farace, an agent of Nixon Peabody, LLP and Nixon Peabody Financial Advisors, LLC, represented Mr. Wellin in various estate planning matters. In 2003, Mr. Wellin engaged in a series of transactions to reduce the amount of estate taxes due on his death (generally, the 2003 transactions). Acting on advice from Farace, Mr. Wellin and his three children from a prior marriage, Peter J. Wellin (Peter), Cynthia W. Plum (Ceth), and Marjorie W. King (collectively, the Wellin children), established Friendship Partners, LP, which was funded with shares of Mr. Wellin's Berkshire Hathaway Class A stock valued at about $90 million.[1] Mr. Wellin owned 98.9% of Friendship Partners, while a separate limited liability corporation controlled by the Wellin children owned 1.1% of Friendship Partners. In recommending and executing the 2003 transactions, Farace sought to reduce Mr. Wellin's estate assets by exchanging the value of the stock shares for less valuable limited partnership units.

A few years later, in 2006, Farace advised Mr. Wellin that the strategy on which the 2003 transactions had been based was now considered questionable as a method for reducing estate taxes. Farace accordingly recommended alternative tax-savings techniques, including a sale of Mr. Wellin's limited partnership units to "an intentionally defective grantor trust." Mr. Wellin did not immediately take any action regarding this advice.

---

[1] In 2007, Mr. Wellin assigned his interest in Friendship Partners to a revocable trust. For ease of reference, we refer to Mr. Wellin's assigned interest as his own when describing later transactions.

Mr. Wellin was diagnosed with cancer in 2008. Around that time, Farace again recommended that Mr. Wellin consider selling his limited partnership units to an intentionally defective grantor trust. In 2009, Mr. Wellin implemented this alternative strategy.

With Farace's assistance, Mr. Wellin established the Wellin Family 2009 Irrevocable Trust (the irrevocable trust), which named the Wellin children as trustees. In November 2009, Mr. Wellin signed the trust agreement and sold his partnership units in Friendship Partners to the irrevocable trust (the 2009 transaction). As a result of the 2009 transaction, Mr. Wellin's prior 98.9% interest in Friendship Partners was transferred to the irrevocable trust in exchange for a promissory note worth only about $50 million, a substantial reduction from the original value of the stock shares. Farace predicted a future estate tax savings of between $14 and $18 million based on the 2009 transaction.

Mr. Wellin later expressed confusion regarding the impact of the 2009 transaction on his estate tax liability. In response, Farace sent Mr. Wellin letters in January 2010 and November 2011 further explaining the 2009 transaction. Farace advised that as a result of the 2009 transaction, "more wealth" should pass to the Wellin children, observing that if they liquidated the assets of Friendship Partners several years after Mr. Wellin's death, each would inherit an additional $30 million after income tax liabilities were calculated. Farace described the 2009 transaction as "a very efficient strategy for reducing estate tax," because the transaction serves to "freeze" the estate. According to Farace's letters to Mr. Wellin, "any appreciation in the value of the Friendship Partners LP units over the Note

5

interest rate passes to the trust beneficiaries . . . both gift and estate tax free." Farace repeated this advice in a letter he sent to Mr. Wellin in November 2012.

On February 8, 2012, Mrs. Wellin sent an email (the February 2012 email) to Farace's assistant expressing concern over Farace's loyalty to Mr. Wellin, suggesting that Farace improperly was giving priority to the interests of the Wellin children. In the email, Mrs. Wellin stated, "What did [Farace] say to [Mr. Wellin's daughter,] Ceth. [H]er behavior was hostile towards me to say the least. . . . I am concerned about [Farace's] divided loyalties, as are the doctors here."

Mr. Wellin terminated his attorney-client relationship with Farace in mid-2013 and hired a new attorney, Edward Bennett, who provided advice regarding the 2009 transaction. While represented by Bennett, Mr. Wellin filed suit in July 2013 against the Wellin children to set aside the 2009 transaction, alleging that Mr. Wellin did not know or understand that he had relinquished control of his partnership interests or that he would retain income tax liability if the Wellin children sold their interests during his lifetime. That litigation later was dismissed without prejudice upon settlement of the case.

Meanwhile, in November and December 2013, the Wellin children sold the shares held by Friendship Partners for $157 million. Mr. Wellin passed away in 2014.

In February 2016, the Estate filed the present action against Farace, Nixon Peabody, LLP, and Nixon Peabody Financial Advisors, LLC (the defendants), alleging claims of negligence, breach of fiduciary duty, and breach of contract that were premised on the same

6

underlying facts and conduct by the defendants.[2]  The particular claim at issue here is the Estate's allegation that the defendants failed to inform Mr. Wellin about the risks and consequences of the 2009 transaction, including Mr. Wellin's potentially substantial tax exposure.[3]

In the district court, the Estate submitted reports prepared by Bennett and other expert witnesses regarding the defendants' alleged breaches of the standard of care, including Farace's failure to advise Mr. Wellin of the potential income and gift tax implications of the 2009 transaction.  In one report, Jerome M. Hesch, an attorney whose practice focuses on taxation and estate planning, stated that Farace's communications with Mr. Wellin, including letters sent in 2010, "misrepresent[ed] the actual risks [and] benefits" of the 2009 transaction, and that Farace's statement that the 2009 transaction would result in "more wealth" transferred to the Wellin children was "grossly misleading."

Hesch noted several specific areas of concern regarding the 2009 transaction, including issues of valuation and tax liability.  Hesch opined that the 2009 transaction exposed Mr. Wellin to a potential gift tax liability of $17.5 million, plus interest and

---

[2] The Estate also alleged several other claims that it since has abandoned: (1) claims withdrawn in the district court relating to the 2003 transaction; and (2) other claims withdrawn at oral argument before this Court, namely, claims relating to the Wellin children, including Farace's alleged conflict of interest in representing both the Estate and one or more of the Wellin children, and the defendants' acts of allegedly aiding and abetting two of the children in breaching their fiduciary duties in connection with the 2009 transaction.

[3] During oral argument before this Court, counsel for the Estate represented that "the tax consequences [of the 2009 transaction] are the fundamental claim."

7

penalties, in exchange for only a *potential* savings in estate tax. Hesch also stated that the defendants failed to inform Mr. Wellin that he risked "extreme" income tax liability if the Wellin children liquidated their assets in Friendship Partners during Mr. Wellin's lifetime. According to Hesch, because Mr. Wellin was not an estate tax lawyer, he would not have been aware until he met with Bennett in mid-2013 that the defendants had misled Mr. Wellin about the risks of the 2009 transaction.

An additional expert witness, William O. Higgins, an attorney in South Carolina whose practice includes attorney malpractice, generally agreed with the views expressed by Hesch and stated that the defendants did not fully communicate to Mr. Wellin the "risks and implications" of the 2009 transaction. According to Higgins, Mr. Wellin "may not have [had] sufficient assets and liquidity to pay income taxes" that could have resulted from the 2009 transaction.

Bennett's views of the potential risks of the 2009 transaction generally aligned with the opinions of Hesch and Higgins. In addition, Bennett stated that Mr. Wellin's potential income tax exposure exceeded $40 million, plus interest, upon the liquidation of Friendship Partners' assets while Mr. Wellin was still alive.[4]

The defendants filed two separate motions for summary judgment on numerous grounds, including that the Estate's claims were barred by the three-year statute of limitations, which the parties agreed expired on October 30, 2015. Opposing the motion

---

[4] The Estate did not pay any tax on the Wellin children's sale of the stock shares, and any attempt to collect such a tax by the IRS appears now to be barred by the statute of limitations.

for summary judgment, the Estate contended that Mr. Wellin did not learn that the defendants had failed to inform him fully about the risks of the 2009 transaction until he hired Bennett in mid-2013.

The district court awarded summary judgment to the defendants, holding that the Estate was on notice of its potential claims against the defendants more than three years prior to the limitations expiration date of October 30, 2015. The district court concluded that the February 2012 email triggered the limitations period for claims relating to the 2009 transaction and qualified as objective evidence that the Estate was aware of the defendants' "divided loyalties" between Mr. Wellin and the Wellin children.

After the district court's ruling, the Estate filed a motion to alter or amend the court's order under Federal Rules of Civil Procedure 59(e) and 60(b). In its motion, the Estate argued that Mrs. Wellin's concerns raised in the February 2012 email related only to Farace's advice to Mr. Wellin about his tangible personal property. The Estate supported this argument by supplementing the record with additional emails from Farace addressing the benefits of updating Mr. Wellin's list of personal property.

The district court denied the Estate's motion. The court held that the defendants' "alleged failure to communicate the risks and consequences of the [2009 transaction] and the Personal property dispute [were] harms of the same nature and not separate and distinct," because those harms arose from Farace's alleged "divided loyalties" between Mr. Wellin and the Wellin children. The court further concluded that the Estate had failed to provide any "evidence that the risks and consequences of the November 2009 transaction were not readily discoverable" in February 2012. Finally, the court held that the record

9

established that Mrs. Wellin was Mr. Wellin's agent based on the inferences that could be drawn from her email to Farace's assistant. The Estate appealed from the district court's judgment.

## II.

We review the district court's award of summary judgment de novo. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Estate maintains that the district court erred in concluding, based on the February 2012 email, that Mr. Wellin was aware that he had a potential malpractice claim against Farace for his work on the 2009 transaction. According to the Estate, the court reached this result by improperly characterizing as harms of the "same nature" (1) Farace's purported conflict of interest in handling the disposition of Mr. Wellin's personal property, and (2) Farace's alleged failure to advise Mr. Wellin of the potential tax liability from the 2009 transaction. Arguing that these harms were different in kind, the Estate contends that the February 2012 email was not evidence that Mr. Wellin was on notice that he had a claim against Farace concerning the estate planning advice he received for the 2009 transaction. Thus, the Estate asserts that the statute of limitations was not triggered by the February 2012 email, and that the record contains evidence that Mr. Wellin could not

reasonably have discovered his actual tax exposure arising from the 2009 transaction until he consulted with Bennett in mid-2013.

In response, the defendants argue that the email from Mrs. Wellin to Farace's assistant in February 2012 showed that Mr. Wellin was aware that he had a malpractice claim against Farace. The defendants contend that, as of February 2012, Mr. Wellin reasonably should have investigated the defendants' work with respect to the 2009 transaction, because Farace's alleged "divided loyalties" were known to Mr. Wellin and ultimately served as the basis underlying all the Estate's claims. The defendants further assert that based on the letters Farace sent to Mr. Wellin in January 2010, Mr. Wellin should have been aware that he had a potential cause of action against the defendants for the allegedly improper tax advice regarding the 2009 transaction. We disagree with the defendants' position.

The Estate's claims each are subject to a three-year statute of limitations. S.C. Code § 15-3-530; *Stokes-Craven Holding Corp. v. Robinson*, 787 S.E.2d 485, 489 (S.C. 2016) (legal malpractice); *Mazloom v. Mazloom*, 675 S.E.2d 746, 755 (S.C. Ct. App. 2009) (breach of fiduciary duty); *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998) (breach of contract). Under South Carolina law, the limitations period begins to run when the "injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997) (citing *Dean v. Ruscon Corp.*, 468 S.E.2d 645 (S.C. 1996)); *see* S.C. Code § 15-3-535. Thus, the three-year clock starts when "the facts and circumstances of an injury would put a person of common knowledge and experience on

11

notice that some claim against another party might exist." *Stokes-Craven Holding*, 787 S.E.2d at 489; *see also Benton v. Roger C. Peace Hosp.*, 443 S.E.2d 537, 538-39 (S.C. 1994) (holding that knowledge of wrongdoing, namely, leaving patient unattended in wheelchair that fell over, did not trigger statute of limitations for injuries not readily discoverable at the time of the accident). In the context of attorney malpractice, "absent other facts, [a] client should be able to rely on the attorney's advice and should be able to follow this advice without fear [that] the attorney is not acting in the client's best interest." *True*, 489 S.E.2d at 617.

In the present case, the district court relied on a South Carolina decision, *Dean v. Ruscon Corporation,* to conclude that the alleged harm of Farace's failure to communicate all the tax consequences of the 2009 transaction was of the same nature as the harm involving Farace's alleged conflict of interest in working on behalf of the Wellin children. 468 S.E.2d at 647-48. As noted above, the district court held that the alleged harm involving the 2009 tax transaction was of "the exact nature" as Farace's communication with the Wellin children because both alleged injuries were based on the Estate's position that "Farace was derelict in performing his legal duties" involving the disposition of Mr. Wellin's assets.

We conclude that the district court misapplied the holding in *Dean*, which was based on facts not analogous to the present situation. In *Dean*, the South Carolina court addressed two harms, namely, a crack in a building that occurred in 1984 because of work done on a nearby construction site, and an enlarged crack and "bulging" on the same corner of the building in 1985 after the construction work resumed. *Id.* at 646-48. The court concluded

12

that because the damage apparent in 1985 was in the same location and "of the same nature" as the original harm, the later damage to the building was "not separate and distinguishable," and was discoverable at the time of the original injury. *Id*. at 648.

Here, however, unlike in *Dean*, the two potential claims against the defendants involved two different types of injuries. One injury related to the increased, potential tax exposure Mr. Wellin allegedly suffered because of Farace's advice regarding the 2009 transaction, while the other injury related to Farace's alleged conflict of interest regarding the disposition of Mr. Wellin's personal property. Thus, although these two claims in the present case both related to Farace's representation of Mr. Wellin, the claims involved different conduct and different alleged injuries.

Nothing in the email exchange involving Mrs. Wellin, Farace, and Farace's assistant referenced the defendants' role in the 2009 transaction or the defendants' advice to Mr. Wellin about that transaction. Thus, contrary to the district court's conclusion, the February 2012 email exchange did not establish that the allegedly misleading and incomplete tax advice related to the 2009 transaction was a harm "of the same nature" as the harm involving the disposition of Mr. Wellin's personal property. *Dean*, 468 S.E.2d at 648. Knowledge of Farace's interaction with the Wellin children concerning the personal property did not place Mr. Wellin on notice that he should investigate the defendants' work performed three years earlier regarding a complicated tax strategy.

The record also contained evidence that a person of common knowledge could not readily have discovered the alleged breach of duty involving the tax implications of the 2009 transaction. The Estate's primary expert witness, Hesch, opined that given the nature

13

of the advice at issue, Mr. Wellin would have been unable to discern that he had received misleading and incomplete tax advice unless he had consulted with a different estate tax professional. In addition, the defendants conceded in the district court that nothing in the documents relating to the 2009 transaction revealed any information about the transaction's tax consequences.

We further observe that the evidence is in dispute whether letters Farace sent to Mr. Wellin in January 2010, November 2011, and November 2012 provided Mr. Wellin adequate notice to discover the full scope of the tax implications of the 2009 transaction. Although portions of those letters discuss certain tax obligations relating to the promissory note and to gift and estate tax liability, Hesch reviewed this correspondence and opined that the letters contained various misrepresentations and omissions, including the omission regarding the potential $17.5 million in gift tax liability.

In addition, Mr. Wellin's new counsel, Bennett, stated that the defendants failed to inform Mr. Wellin that he could be subject to $40 million in income tax liability in the event that the Wellin children decided to liquidate their assets in Friendship Partners prior to Mr. Wellin's death. According to Hesch, given these misrepresentations and omissions, a person of common knowledge would not have known that he should investigate the accuracy of the tax advice he had received. *See Stokes-Craven Holding*, 787 S.E.2d at 489; *True*, 489 S.E.2d at 616-17. Thus, contrary to the district court's conclusion, there is evidence in the record that the risks and consequences of the 2009 transaction were not readily discoverable by Mr. Wellin until he consulted with Bennett in mid-2013.

14

We therefore hold that the district court erred in concluding that the harm and the potential claim against the defendants regarding Farace's alleged work on behalf of the Wellin children, evident in the February 2012 email, were of the same nature as the Estate's claim that the defendants engaged in misconduct in 2009 by failing to advise Mr. Wellin properly of the potential tax liability created by the 2009 transaction. We further hold that there are disputed issues of material fact regarding whether the purported malpractice was discoverable by Mr. Wellin prior to his meeting with Bennett in mid-2013.[5] Accordingly, the district court erred in awarding summary judgment to the defendants based on the statute of limitations.

III.

For these reasons, we vacate the district court's judgment that the Estate's claims were barred by the statute of limitations. We remand the case for further proceedings in the district court, including the court's consideration in the first instance of the other grounds advanced by the defendants in their motions for summary judgment.

*VACATED AND REMANDED*

---

[5] In light of this holding, we do not reach the question whether the record demonstrates, as a matter of law, that Mrs. Wellin qualified as her husband's agent for purposes of imputing to Mr. Wellin her knowledge of any misconduct by the defendants. We similarly need not address the Estate's alternative arguments regarding equitable tolling or estoppel by silence.